**Edward O. BUFKIN, Jr., Appellant,**

v.

**Elizabeth W. BUFKIN, Appellee.**

**No. 05–06–01719–CV.**

Court of Appeals of Texas,
Dallas.

July 1, 2008.

Rehearing Overruled July 25, 2008.

David J. Potter, Texarkana, for appellant.

Charles W. McGarry, Law Office of Charles McGarry, Dallas, for appellee.

Before Justices O'NEILL, RICHTER and LANG.

## OPINION

Opinion by Justice O'NEILL.

Edward O. Bufkin, Jr. ("Edward") sued his wife, Elizabeth W. Bufkin ("Elizabeth"), for divorce in 1996, after nine years of marriage. The ensuing, protracted divorce proceeding, including two trials and several mandamus proceedings, has been focused on what property is subject to division under the terms of a prenuptial agreement. A divorce decree ("First Decree") was signed after the first trial on

348

September 14, 2001 ("Divorce Date"). On appeal, the property division in the First Decree was reversed and the case remanded. This second appeal is taken from the second trial court judgment ("Second Decree"), which awarded Elizabeth community property rights in certain stock dividends and the valuation increases in two pieces of real property, a residence and a ranch. Edward raises seven issues. By cross-appeal, Elizabeth raises two.

First, Edward contends that an agreement to limit issues raised in the first appeal dictates what property is subject to division on remand by the second trial court. In his second and third issues, he complains about the trial court's exclusion of expert witness testimony and rebuttal evidence on the value of his ranch and its refusal to admit evidence of fault. Fourth, Edward argues that the trial court was wrong to disregard the jury's finding that a loan obligation is a community debt to be bourne by both Elizabeth and Edward. Issue five complains about the court's award of dividend income to Elizabeth. In issue seven, Edward then states that the trial court erred by refusing to make requested findings of fact and conclusions of law. Elizabeth's cross-appeal raises two issues relating to the trial court's refusal to disregard jury findings on two property valuations. We are not persuaded by either ex-spouse on any of these issues. We affirm the Second Decree on these points.

One of Edward's issues, however, has merit. Issue six contends that an award of prejudgment interest is improper because Elizabeth did not plead for prejudgment interest and there is no statutory basis to support her recovery. We agree. The trial court's award of prejudgment interest, therefore, is reversed and judgment rendered that Elizabeth recover no prejudgment interest.

## Background

Edward and Elizabeth married on July 26, 1987. Six days before the wedding, Edward and Elizabeth signed the Antenuptial Contract ("Agreement") in which they set out their relative rights to property. In essence, all property owned before marriage or acquired during the first five years of marriage, or on or before July 26, 1992 ("Fifth Anniversary"), was the respective spouse's separate property. However, the Agreement provides that "a community property estate will accumulate from and after a date which is five years from the date of the marriage of the parties." Specifically, Section XVIII of the Agreement states:

"It is agreed by the parties that from and after the [Fifth Anniversary], all income from all sources, from personal services, separate property, or otherwise; ... all earnings from personal services of each party; all property or increases in kind or in value of property that is the product of either party shall become the community property of the parties provided that it is acquired or produced from and after such date...."

Edward and Elizabeth stipulated to the validity and enforceability of the Agreement.

During the first trial court proceeding, the judge granted a series of partial summary judgments declaring, among other things, the following items to be Edward's separate property:

A. a residence at 3724 Wooded Creek Drive in Dallas County;

B. a ranch in Oklahoma;

C. all outstanding shares of stock in Campeon Pipeline Corporation ("Campeon"); and

D. all shares of stock in Norgasco, Inc. ("Norgasco") held in Edward's name.

The first trial judge also issued a pre-trial order stating the Agreement dictated that any increase in the value of Edward's separate property was not community property and found that there was "no community property other than personal property in the possession of the parties." The judge then incorporated his pre-trial ruling and the partial summary judgments classifying property into the First Decree.

Elizabeth appealed. Her appeal was heard by the Eighth District Court of Appeals in El Paso. While on appeal, the parties agreed that Elizabeth would "narrow the scope of her appeal to the following issues: (1) whether the trial court erred in granting summary judgment, and (2) whether it erred in dividing the community estate by not including the increase in value of the Norgasco stock." In exchange, Edward agreed to dismiss his cross-appeal.

In its memorandum opinion dated November 20, 2003, the El Paso Court reversed the First Decree and remanded the case for a division of the community estate. *Bufkin v. Bufkin*, No. 08–02–00025–CV, 2003 WL 22725522 at \*5–\*6 (Tex.App.El Paso November 20, 2003, pet. denied). Focusing principally on the Norgasco stock acquired by Edward during the first five years of the marriage, the Eighth Court of Appeals determined "increases in kind or value of the [Norgasco] stock were susceptible of being produced from the separate property both before and after the [Fifth Anniversary]. We agree the [Norgasco] stock was not acquired after the anniversary, but [Edward][sic] wholly fails to distinguish the plain language that any increase in kind or value produced after the anniversary is community, under the [A]greement." *Id* at \*4. The El Paso Court then concluded there was some evidence in the record that the difference in the value of Edward's Norgasco stock on

the Fifth Anniversary and the Divorce Date was not *de minimus* and could have affected the just and right division of the Bufkins' community estate. Citing to *Jacobs v. Jacobs,* 687 S.W.2d 731 (Tex.1985), the panel "remand[ed] the entire community estate to the trial court for a just and right division." *Id.* at \*6.

On remand, Edward and Elizabeth each raised claims for breach of the Agreement and equitable claims for reimbursement and injunctive relief. Elizabeth did not ask for prejudgment interest. Instead, her live pleading asks for "such other and further relief, general or special, legal or equitable, to which she may show herself justly entitled to receive."

A jury trial was conducted and the jury issued findings on ten facts:

1. The value of Edward's stock in Norgasco on the Fifth Anniversary was $2,351,250;

2. The value of Edward's stock in Norgasco on the Divorce Date was $1,660,000;

3. The value of Edward's stock in Campeon on the Fifth Anniversary was zero;

4. The value of Edward's stock in Campeon on the Divorce Date was zero;

5. The value of the residence on the Fifth Anniversary was $210,000;

6. The value of the residence on the Divorce Date was $284,000;

7. The value of the ranch on the Fifth Anniversary was $1,506,680;

8. The value of the ranch on the Divorce Date was $2,038,400;

9. The debt owed to the Northrim Bank of Alaska ("Bank") as of the Divorce Date was $835,983.07; and

10. The debt owed to the Bank should be assumed one-half by each party.

Edward filed a motion asking the second trial judge to disregard the jury's findings nine (the amount of the Bank debt as of the Divorce Date), and seven (the Fifth Anniversary value of his ranch). Elizabeth filed her own motion also challenging fact-finding seven and additionally asking the court to disregard the jury's fourth finding (the value of Edward's stock in Campeon on the Divorce Date) and fact-finding ten (characterizing the Bank debt as an obligation to be assumed one-half by each ex-spouse). The trial court disregarded fact-finding ten but adopted all other findings by the jury.

Judge Lewis signed the Second Decree on October 2, 2006 and awarded Elizabeth $302,010.00, "said sum being equal to one-half of the increase in value in Edward O. Bufkin Jr.'s residence in Farmer's Branch, Texas, plus one-half of the increase in value of his ranch in Oklahoma" less a mediation fee of $850.00. Elizabeth was also awarded $124,659.12 in prejudgment interest, measured from the Divorce Date. The second trial court also held that "[p]rior sums awarded as interim attorney's fees to [Elizabeth] are found to have effected a just and equitable division of the community income out of which they were paid, and shall not be reimbursed...." The judge then incorporated the jury's findings that Edward's shares in Norgasco and Campeon had not appreciated and that the ranch's value on the Fifth Anniversary was $1,506,680. Disregarding the jury's finding that the debt owed to the Bank should be allocated one-half to each ex-spouse, the trial court concluded "the evidence conclusively established that such debt should be allocated solely to [Edward]." Both parties perfected appeals from the Second Decree.

## Discussion

### 1. The Rule 11 Agreement

■■■ Edward's first issue contends that the letter agreement made during the first appeal limited what issues could be remanded to the second trial court to only a division of any increase in value of Edward's Norgasco stock.[1] The El Paso Court of Appeals, however, determined that once it found that there was some evidence that there was an increase in the value of Edward's Norgasco stock between the Fifth Anniversary and the Divorce Date, it had to remand the entire community estate for division-not just any increased value of the Norgasco stock. We agree.

■ Appellate courts cannot reverse only one piece of a property division. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985); *Schlafly v. Schlafly*, 33 S.W.3d 863, 872 (Tex.App.-Houston[14th Dist.] 2000, pet. denied) (appellate court does not have authority to render judgment dividing marital property). Instead, a court of appeals must remand the entire community estate for a new division. *Jacobs*, 687

1. Although not contained in Edward's first issue, his brief argues that, not only should the issues on remand be limited, the case should also have been remanded to a specific visiting judge who presided over the first trial. However, the case was properly remanded to the trial court where the sworn and elected judge, Marilea Lewis, had authority to preside over the second trial. *Davis v. Crist Indus., Inc.*, 98 S.W.3d 338 (Tex.App.-Fort Worth 2003, pet. denied)(assignment of case to visiting judge does not give visiting judge exclusive authority to try case); *Starnes v. Chapman*, 793 S.W.2d 104, 106–07 (Tex.App.Dallas 1990, orig. proceeding) (assigned judge did not continue to have authority to proceed once case was reversed and remanded unless reassignment ordered). In addition, the record reflects that the visiting judge's assignment to the case was canceled in an order relieving judge entered on March 16, 2005– over nine months before trial.

S.W.2d at 732. We resolve Edward's first issue against him.

## 2. *Excluding Expert Testimony and Rebuttal Evidence*

Edward's second issue contends that the trial court committed reversible error when it excluded the testimony of Edward's real estate appraiser, Tom Jackson, and rebuttal evidence on the value of the ranch and residence.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Interstate Northborough P'ship v. State,* 66 S.W.3d 213, 220 (Tex.2001); *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). The trial court's evidentiary ruling will be upheld if there is any legitimate basis for the ruling. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). Under an abuse of discretion standard, we are not free to substitute our judgment for the trial court's judgment. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). Instead, a trial court abuses its discretion only if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

### A. *The Expert*

 Rule 702 of the Texas Rules of Evidence governs the admissibility of expert testimony. Tex.R. Civ. Evid. 702; *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 554 (Tex.1995). Rule 702 provides: "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may tes-

tify thereto in the form of an opinion or otherwise." Tex.R. Civ. Evid. 702. The testimony must be relevant and based on a reliable foundation. *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 727–28 (Tex.1998); *Robinson,* 923 S.W.2d at 554. Once the opposing party objects to proffered expert testimony, the proponent of the witness' testimony bears the burden of demonstrating its admissibility. *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996); *Robinson,* 923 S.W.2d at 557.

 If the foundational data underlying an expert's opinion testimony is unreliable, the expert will not be permitted to base an opinion on that data because any opinion drawn from that data is likewise unreliable. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 714 (Tex.1997). A flaw in the expert's reasoning from the data may render reliance unreasonable and render his inferences drawn from information dubious. *Id.* In that circumstance, the expert's testimony is unreliable and legally constitutes no evidence. *Id.*

The trial court held a full evidentiary hearing on the admissibility of opinion testimony by Edward's real estate appraisal expert, Tom Jackson. Mr. Jackson admitted that Edward asked him to appraise the ranch as raw land as of the Fifth Anniversary and the Divorce Date ignoring the value of the timber on the land. He was then instructed to include a third party's timber appraisal originally from June 1996 [2] in his total values. Although he was a trained and certified forester, Jackson was not engaged to express an opinion on the timber value The expert admitted that the method dictated by Edward's counsel did not conform with mandatory provisions of the Uniform Standards of Professional

---

2. The June 1996 timber appraisal was later amended after a reduced appraisal process to include values for the timber as of the Fifth Anniversary and the Divorce Date.

Appraisal Practice[3] and that he had never valued real estate "that way" before.

During the *Daubert–Robinson* hearing, Edward offered no evidence regarding the reliability of the third party's timber appraisal or its methodology, and, thus, he failed to prove the underlying data for his expert's opinion was reliable. Accordingly, the trial court did not abuse its discretion in concluding that the expert's methodology was unreliable and excluding his testimony. We overrule Edward's third issue as to the exclusion of Mr. Jackson's testimony.

### B. Rebuttal Testimony

■ Edward also argues that he was precluded from presenting "rebuttal testimony" concerning the value of his ranch and residence. The judge gave each party an equal amount of time. The record does not reflect any details of the time limitations except that the trial court apprised him of his remaining time when he rested. Edward does not complain about the trial court's time limitations. Texas Rule of Civil Evidence 611 accords the trial court the ability to exercise reasonable control over the interrogation of witnesses and presentment of evidence. Tex.R. Civ. Evid. 611(a).

After the trial, Edward tried to introduce evidence (1) to rebut Elizabeth's testimony that he told her the value of the ranch was at least $425 an acre; or (2) to dispute the valuations for the residence by Elizabeth's expert. Edward argues because rebuttal testimony was not allowed by the trial court, his appraiser could not defend his appraisal or critique Elizabeth's expert's appraisal The record reflects, however, Edward had ample opportunity to cross-examine Elizabeth's valuations

and did not. We conclude that his concerns could have been addressed when he examined Elizabeth in his case-in-chief and cross-examined her residential real estate expert. Further, although given the opportunity, he did not examine her after the pertinent testimony.

■ A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995). In determining if the excluded evidence probably resulted in the rendition of an improper judgment, a court must review the entire record. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989). A court ordinarily will not reverse a judgment for erroneous rulings on admissibility of evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *Gee*, 765 S.W.2d at 396. To obtain a reversal of a judgment based on error in the exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. Tex.R.App. P. 44.1; *Alvarado*, 897 S.W.2d at 753; *McCraw*, 828 S.W.2d at 757.

Given his full presentation of his expert's testimony, his cross-examination of Elizabeth's expert and his waiver of his right to cross-examine Elizabeth, we are not persuaded that the exclusion of the evidence Edward included in his bill of exception resulted in an improper judgment. We resolve Edward's second issue as to rebuttal evidence against him.

---

**3.** "USPAP". Section 858.726 of the Oklahoma Certified Real Estate Appraiser's Act specifically requires Oklahoma appraisers to comply with USPAP. Okla.Stat.Ann. Tit. 59 § 858–726 (West 2000).

### 3. Exclusion of Evidence of Fault

■ Edward's third issue argues the trial court was wrong to exclude evidence of fault. Edward and Elizabeth both stipulated to the validity and enforceability of the Agreement. The El Paso court held that once Edward made this stipulation, he could not then argue it was invalid. *Bufkin*, 2005 2272522 at *4. Section XI of the Agreement expressly provides for the division of property in the event of divorce. Specifically, "each party will take, in full settlement of his or her property and all other rights due upon divorce, only his or her separate property estate and his or her one-half (½) share of the community property estate of the parties." The Texas Family Code authorizes such written agreements. TEX. FAM.CODE ANN. §§ 4.001–4.009 (Vernon 2006).

Since Edward and Elizabeth have contracted how the community estate was to be divided in the event of divorce, provisions of the Texas Family Code allowing evidence of fault [4] in divisions do not apply. The Agreement's terms dictated an even division of the community estate. Accordingly, evidence of fault is not relevant and the trial judge did not abuse her discretion when she excluded it. We resolve Edward's third issue against him.

### 4. Dueling Motions to Disregard Jury Findings

#### 1. Disregarding Jury Findings

■ Edward's fourth issue contends that the trial court committed reversible error when it granted Elizabeth's request to disregard the jury's answer Question No. 10, which allocated the Bank debt to both parties. The judge reasoned that "no evidence supported such answer, and the evidence conclusively established that such

debt should be allocated solely to [Edward]."

■ A trial court may properly disregard a jury's finding of fact where the evidence supporting the finding is legally insufficient. *Toles v. Toles*, 45 S.W.3d 252, 259 (Tex.App.-Dallas 2001, pet. denied); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). Evidence is legally insufficient where (1) there is a complete lack of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 188 (Tex.App.-Dallas 1996, no writ).

The record reflects that the debt at issue was borrowed by Campeon to build a pipeline at Cedar Creek which was never completed. Edward signed guarantee for the debt but only used his separate property as collateral. Section XI of the Agreement specifically provides that "[a]ll liabilities benefiting separate property *shall be assumed* by the owner of the separate property" (emphasis added). There is no evidence in the record that the money borrowed by Campeon ever benefited the community or that the loan proceeds received from the Bank were used to pay for the Bufkins' living expenses. Accordingly, the Agreement dictates that the debt must be assumed by the owner of the separate property. Since Edward owned the Campeon shares as his separate property, he alone assumes Campeon's liabilities, including the Bank debt. Edward's fourth issue is overruled.

The trial court did issue its own findings of fact on issues not included in the jury

**4.** TEX. FAM.CODE ANN. § 7.001 (Vernon 2006).

charge. Edward's seventh issue complains that it issued its findings, the trial court failed to include findings of fact he proposed. But, Edward fails to disclose what specific finding is the subject of his complaint. Bare assertions of error, without argument or authority, waive error. *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex.App.-Dallas 1995, writ denied). *See also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to waive point of error due to inadequate brief). When a party fails to adequately brief a complaint, he waives the issue on appeal. *Devine v. Dallas County*, 130 S.W.3d 512, 513–14 (Tex.App.-Dallas 2004, no pet.); *Howell v. T S Commc'ns, Inc.*, 130 S.W.3d 515, 518 (Tex.App.-Dallas 2004, no pet). Since we cannot discern what finding is the subject of Edward's seventh issue, we hold that he has waived his complaint.

### B. Refusing to Disregard Jury Findings

Elizabeth also asked the trial court to disregard two other jury findings: (1) the jury's Divorce Date value of Edward's Campeon stock, and (2) the jury's Fifth Anniversary value of the ranch. The trial court's refusal to disregard these findings gives rise to her two issues.

The appeal of a trial court's refusal to disregard a jury finding is a challenge to the legal sufficiency of the evidence supporting the finding. *Hinkle v. Hinkle*, 223 S.W.3d 773, 777–78 (Tex.App.-Dallas 2007, no pet.). In contrast to reviewing a trial judge's decision to disregard a finding, when the trial court upholds a jury finding, we examine the entire record, considering the evidence both in favor of and contrary to the challenged finding. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam)). Anything more than a scintilla is legally sufficient to support the finding. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003); *Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex.App.-Dallas 2006, pet. denied).

So, we must determine whether the record contains more than a scintilla of evidence that (1) Edward's Campeon stock on the Divorce Date was worthless, and (2) the ranch's value on the Fifth Anniversary was $1,506,680. More that a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Turner v. Church of Jesus Christ of Latter–Day Saints*, 18 S.W.3d 877, 899 (Tex.App.-Dallas 2000, pet denied). Evidence that is so weak that it only creates a mere surmise or suspicion of a fact is legally insufficient and constitutes no evidence. *Id.* at 898–99.

In her first issue, Elizabeth argues that the trial court erred by refusing to disregard the jury's answer on the Fifth Anniversary value of the ranch because the parties had stipulated to a different amount. The "stipulation" apparently arises from Edward's post-verdict motion[5] in which he argues that undisputed evidence established the Fifth Anniversary value of the ranch to be $1,101,794.37, and Elizabeth's response that she did not introduce any controverting evidence of the ranch's value. A stipulation, however, is "an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys respecting some matter incident thereto." *Travelers In-*

---

**5.** Motion for Decree on Jury Verdict and for Judgment N.O.V. Regarding the Amount of Northrim Bank Debt and Valuation of Mountain Top Ranch filed by Edward on February 15, 2006.

*dem. Co. of Rhode Island v. Starkey,* 157 S.W.3d 899, 904 (Tex.App.-Dallas 2005, pet.denied) (quoting *Shepherd v. Ledford,* 962 S.W.2d 28, 33 (Tex.1998)); *Ortega–Carter v. American Int'l Adjustment Co.,* 834 S.W.2d 439, 441–42 (Tex.App.-Dallas 1992, writ denied). To be enforceable, the stipulation must be in writing, signed, and filed as part of the record, or made in open court and entered of record. TEX.R. CIV. P. 11. Stipulations are binding upon the parties, the trial court, and the reviewing court. *Id.* (citing *Jim Sowell Const. Co., Inc. v. Dallas Cent. Appraisal Dist.,* 900 S.W.2d 82, 84 (Tex.App.-Dallas 1995, writ denied)); *M.J.R.'s Fare of Dallas, Inc. v. Permit & License Appeal Bd.,* 823 S.W.2d 327, 330–31 (Tex.App.-Dallas 1991, writ denied).

 Elizabeth's argument fails for two reasons. First, a stipulation must be an express agreement and cannot arise by implication from a post-verdict statement in one party's motion to disregard a jury finding. TEX.R. CIV. P. 11(". . . no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record . . ."). Second, even if there was an agreement after trial on the ranch's value, that agreement would not be construed as an admission of a fact that was controverted at trial. *Austin v. Austin,* 603 S.W.2d 204, 207 (Tex.1980) (stipulation will not be construed as an admission of a fact intended to be controverted); *Hansen v. Acad. Corp.,* 961 S.W.2d 329, 335 (Tex.App.-Houston[1st Dist.] 1997, pet. denied). The ranch's value on the Fifth Anniversary was controverted and the trial court submitted a question which the jury answered. At trial, Elizabeth's expert witness testified it was worth $2,000,000. Edward testified that he thought the land "clear-cut" (or without timber) was worth $1,000,000. His timber expert valued the timber alone on the Fifth Anniversary at $387,194.37. The jury was entitled to derive a different value within the range established by the evidence. *State Farm Fire & Cas. Co. v. Rodriguez,* 88 S.W.3d 313, 321 (Tex.App.-San Antonio 2002, pet. denied) ("It is well-established that in resolving damages issue, a jury's finding will be upheld if it is within the range of testimony regarding the amount of damages incurred."). We overrule Elizabeth's first issue.

 With respect to the Campeon stock, Edward testified that the value was zero and the corporation had no assets. He stated that Campeon's operations contract with a third party on the Divorce Date precluded the corporation from making any profits and it was merely an shell entity he used to bill actual expenses to the third party without any premium. As the owner of the stock, Edward was able to offer his opinion of its value. *Gulf States Util. Co. v. Low,* 79 S.W.3d 561, 566 (Tex.2002) ("It is well settled that a property owner may opine about the property's value.") (citing *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984)). Elizabeth's stock expert derived a different value for the corporation and her testimony and appraisal were admitted. The jury, however, was not required to adopt the expert's value. A jury is entitled to blend evidence admitted before it and may believe all, some or none of a witness' testimony. *State Farm Fire & Cas. Co.,* 88 S.W.3d at 321.

In conducting our review of both the legal sufficiency of the evidence, we are mindful that the jury, as fact-finder, was the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.; Burns v. Burns,* 116 S.W.3d 916, 920 (Tex.App.-Dallas 2003, no pet.). We may not substitute our judgment for the fact-finder's, even if we would reach a different answer on the evidence.

*State Farm Fire & Cas. Co.*, 88 S.W.3d at 321 (citing *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 407 (Tex.1998)). The evidence before the jury was sufficient to support its finding. Accordingly, Elizabeth's second issue is overruled.

### 5. Edward's Reimbursement Claim

■ The trial judge refused to reimburse "prior sums awarded as interim attorneys' fees to Elizabeth" because they "effected a just and equitable division of the community income out of which they were paid." Although labeled attorneys' fees, the record reflects that the money Edward wants reimbursed were proceeds from quarterly dividends of Nordasko stock issued to its shareholders between the Fifth Anniversary and the Divorce Date. Edward admitted that the $64,000 at issue only reflected two of sixteen quarterly dividends [6] he received between the Fifth Anniversary and the Divorce Date.

As dividends, these payments constituted income. *Fischer–Stoker v. Stoker,* 174 S.W.3d 272, 279 (Tex.App.-Houston[1st Dist.] 2005, pet.denied) ("[D]ividends paid on investments, whether the investments are separate property or not, are income under Texas law and generally community property"). Under Section XVIII of the Agreement, income "yielded by separate property" paid after the Fifth Anniversary and before the Divorce Date is community property. As such, the trial court has broad discretion to determine how to allocate the money. *Penick v. Penick,* 783 S.W.2d 194, 198 (Tex.1988); *Hailey v. Hailey,* 176 S.W.3d 374, 384 (Tex.App.-Houston[1st Dist] 2004, no pet.) (trial court has broad discretion both in evaluating a claim for reimbursement and making a

just and proper division of the community). Further, as community property, Edward has no right of reimbursement of funds identified as dividends because they are already part of the community marital estate defined in Texas Family Code Section 3.401(4)(A). TEX. FAM.CODE ANN. § 3.401(4)(A) (Vernon 2006). We overrule Edward's fifth issue.

### 6. Prejudgment Interest

■ The Second Decree awards Elizabeth "prejudgment interest, measured from [the Divorce Date] at the rate of 8.25% per annum simple interest, in the sum of One Hundred Twenty Four Thousand Five Hundred Seventy Nine and 12/100 Dollars ($124,579.12)." We review the trial court's prejudgment interest award under an abuse of discretion standard. *Wilmer–Hutchins Indep. School Dist. v. Smiley,* 97 S.W.3d 702, 706 (Tex. App.-Dallas 2003, pet. denied). To determine if there was an abuse of discretion, we must decide if the lower court acted without reference to any guiding rules or principles. *Downer,* 701 S.W.2d at 241–42.

■ In his sixth issue, Edward contends that the award of prejudgment interest is wrong because there was no ascertainable sum of money due and payable prior to entry of the Second Decree. He characterizes Elizabeth's claim for prejudgment interest as one arising in equity and requiring a specific pleading request. Elizabeth's pleading merely contains a general prayer for relief. Elizabeth counters that the prejudgment interest results from her claim for a money judgment under the Agreement, which both parties stipulated was valid and enforceable.[7] It

---

6. The record reflects that, during trial, the parties used the terms dividends and distributions interchangeably.

7. Elizabeth also contends that Edward waived his sixth issue by not objecting to the award of prejudgment interest in the trial court. The record reflects that Edward did file a

is undisputed that the Agreement does not provide for the recovery of prejudgment interest.

■ There are two separate bases for an award of prejudgment interest: an enabling statute, or general principles of equity. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507 (Tex.1998); *Granite Const. Co. v. Mendoza,* 816 S.W.2d 756 (Tex.App.-Dallas 1991, writ denied). If Elizabeth's recovery is predicated on a statutory right, she is not required to plead a claim for prejudgment interest. *City of Houston v. Fletcher,* 166 S.W.3d 479, 493 (Tex.App.-Eastland 2005, pet.denied); *Olympia Marble & Granite v. Mayes,* 17 S.W.3d 437, 441 (Tex.App.-Houston[1 Dist.] 2000, no pet.)(citing *Benavidez v. Isles Const. Co.,* 726 S.W.2d 23, 25 (Tex.1987)).

Until its repeal in 1997, Article 5069–1.06 of the Texas Revised Civil Statutes provided for prejudgment interest in contract cases. Tex.Rev.Civ. Stat. Ann. Art. 5069–1.03 (Vernon 1987 & Supp.2007). The statute now governing prejudgment interest is the Texas Finance Code. Tex. Fin.Code Ann. §§ 301.001–304.302 (Vernon 2006); *de la Garza v. de la Garza,* 185 S.W.3d 924, 927–29 (Tex.App.-Dallas 2006, no pet.). The Finance Code provides for the recovery of prejudgment interest in cases involving extensions of credit, wrongful death, personal injury, property damage or condemnation. Tex. Fin.Code Ann. §§ 302.002, 304.101, 304.201 (Vernon 2006).[8]

Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes,* 246 S.W.3d 621 (Tex.2008). In construing statutes, we ascertain and give effect to the Legislature's intent as expressed by the language of the statute. *Id.* (citing *State v. Shumake,* 199 S.W.3d 279, 284 (Tex.2006)). We use definitions prescribed by the Legislature. *Id.* (citing Tex. Gov't Code Ann. § 311.011(b)(Vernon 2005)). Otherwise, we construe the statute's words according to their plain and common meaning. *Id.* (citing *Texas Dep't of Transp. v. City of Sunset Valley,* 146 S.W.3d 637, 642 (Tex.2004)).

■ Unlike its predecessor, Finance Code § 302.002 is silent on contract cases **not** involving extensions of credit. Accordingly, we believe the provision does not apply to contracts where there is no extension of credit. *de la Garza,* 185 S.W.3d at 927–29. While the Agreement requires financial inventories and prescribes the characterization and division of property, its terms do not contemplate any extensions of credit. Therefore, we conclude Section 302.002 does not provide Elizabeth with the means to recover prejudgment interest. *Id.; Natural Gas*

timely motion to modify the judgment in which he objected to the award. Elizabeth did not plead for it and there was no discussion of it in any hearing before entry of the Second Decree. Recovery of prejudgment interest is not even mentioned in Elizabeth's post-verdict motion to enter judgment. Accordingly, we construe Elizabeth's argument to be Edward was required to object before judgment was entered to a cause of action she did not raise. This contention incorrectly assumes that the trial court can award relief a party has not requested. *Bird v. Kornman,* 152 S.W.3d 154, 161, (Tex.App.-Dallas 2004, pet. denied) ("a trial court may not grant relief to a party in the absence of pleadings to support that relief")(citing *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex. 1983)); *Stoner v. Thompson,* 578 S.W.2d 679, 682 (Tex.1979); Tex.R. Civ. P. 301 (judgment must conform to pleadings).

8. The Finance Code does not apply to prejudgment interest recoverable for delinquent taxes or unpaid child support which are governed by Chapter 33 of the Texas Tax Code, and Texas Family Code Section 157.265, respectively. Tex. Fin.Code Ann. §§ 304.301, 304.302 (Vernon 2006).

*Clearinghouse v. Midgard Energy Co.,* 113 S.W.3d 400, 413 (Tex.App.-Amarillo 2003, pet. denied). Since this case does not involve claims for wrongful death, personal injury, property damage or condemnation, Elizabeth cannot seek support from either Section 304.101 (providing prejudgment interest in cases of wrongful death, personal injury or property damage) or Section 304.201 (providing prejudgment interest in condemnation proceedings).

Because we have determined that neither the Agreement nor any enabling statute provides for Elizabeth to recover prejudgment interest, we now turn to common law to see if Elizabeth's general prayer for relief will support the trial court's award. Courts do have the equitable power to award prejudgment interest. *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929 (Tex.1988); *Rio Grande Land & Cattle Co. v. Light,* 758 S.W.2d 747 (Tex.1988) (per curiam). However, where prejudgment interest is sought at common law as an element of the damages, a plaintiff must plead for it. *Benavidez,* 726 S.W.2d at 25 (citing *Republic Nat. Bank v. Northwest Nat. Bank,* 578 S.W.2d 109, 117 (Tex. 1978)). A prayer for general relief does not suffice. *Id.; Vidor Walgreen Pharm. v. Fisher,* 728 S.W.2d 353 (Tex.1987)(per curiam).

We conclude the trial court erred in awarding prejudgment interest to Elizabeth. We sustain Edward's sixth issue.

## Conclusion

We reverse the trial court's judgment insofar as it awards Elizabeth W. Bufkin prejudgment interest, render judgment in favor of Edward O. Bufkin, Jr., and order that Elizabeth take nothing against Edward for prejudgment interest. We affirm the remainder of the trial court's judgment.