# Court of Appeals
## Tenth Appellate District of Texas

=====

10-24-00225-CV

=====

Dudley Construction, Ltd.,
Appellant

v.

Cross Roads Concrete Services, Inc.,
Appellee

=====

On appeal from the
272nd District Court of Brazos County, Texas
Judge John L. Brick, presiding
Trial Court Cause No. 22-000952-CV-272

=====

JUSTICE SMITH delivered the opinion of the Court.

## MEMORANDUM OPINION ON REHEARING

On October 2, 2025, this Court issued a memorandum opinion and judgment in this cause. *See Dudley Constr., Ltd. v. Cross Roads Concrete Servs., Inc.*, No. 10-24-00225-CV, 2025 WL 2801392 (Tex. App.—Waco October 2, 2025, no pet. h.) (mem. op.). In that opinion, we determined that Dudley Construction, Ltd.'s issue number five was waived due to inadequate briefing. Dudley filed a motion for rehearing complaining of our disposition of issue

number five.  After reviewing the motion for rehearing and response thereto, we grant the motion for rehearing solely with respect to Dudley's request for this Court to review its issue number five on the merits.  We deny Dudley's motion for rehearing in all other respects.  Accordingly, we withdraw this Court's opinion and judgment dated October 2, 2025 and substitute this opinion and its associated judgment in their place.

Dudley Construction, Ltd. appeals from the trial court's judgment, rendered after a trial before the court, in this breach of contract suit brought by Cross Roads Concrete Services, Inc.  In six issues, Dudley complains of the trial court's findings of fact and conclusions of law, the award of prejudgment interest, and the trial court's failure to properly interpret Dudley's contractual rights and to incorporate the terms of the parties' Rule 11 Agreement into the judgment.  Because we agree the award of prejudgment interest is erroneous, we modify the judgment to delete that award.  We affirm as modified.

## BACKGROUND

Dudley, as general contractor, contracted with the City of College Station on a project to build an athletic complex.  Cross Roads, a subcontractor on the project, did not construct box culverts in accordance with the requirements for the project.  Rather than removal and replacement of the defective box culverts, the City accepted an alternative repair technique.  However, the City

initially wanted Dudley to furnish an eight-year extended warranty to correct any future issues, backed up with a bond. Dudley demanded that Cross Roads provide the warranty and bond. Cross Roads completed the alternative repairs but did not provide a warranty secured by a bond.

Concerned about Dudley's potential liability to the City, Dudley withheld payment to Cross Roads, waiting for Cross Roads to obtain a bond. Cross Roads filed suit against Dudley for breach of contract and breach of fiduciary duty due to nonpayment of amounts owed to Cross Roads. Dudley filed a counterclaim for breach of contract.

A trial before the court was held in January 2023. The parties signed a Rule 11 Agreement in February 2023 addressing Dudley's concerns about potential liability to the City. In the Agreement, Dudley agreed to provide Cross Roads and the City a video of Dudley's inspection of the culverts, and Cross Roads agreed to obtain specified documents from the City. Cross Roads was also to submit a maintenance agreement to the City for its approval. The maintenance agreement was to be secured by a bond and was to end on June 2, 2027, eight years after the box culvert was completed. The Rule 11 Agreement provided that, if the City failed to execute all of the documents and/or did not accept the maintenance agreement, the parties would provide the trial court with a report on the documents and any arrangements on the

maintenance agreement.  Finally, the Rule 11 Agreement provided that "[t]he Court will consider this written report in its ruling for judgment."

In October 2023, the trial court granted Cross Roads's motion to sever and rendered an order severing all of Dudley's claims and causes of action asserted in this matter against Cross Roads.

On January 8, 2024, the trial court signed a judgment in favor of Cross Roads, ordering that Cross Roads recover from Dudley a total of $85,504.44 owed pursuant to the contract, prejudgment interest of 1.5% each month from the date each of three payments was due until the date of the judgment, attorney's fees of $54,332.00, plus court costs, postjudgment interest, and conditional attorney's fees on appeal.

On January 11, 2024, Dudley filed a proposed final judgment, which the court signed on January 31, 2024.  In that judgment, the court again found in Cross Roads's favor and awarded it $85,504.44 pursuant to the contract but awarded attorney's fees of $35,792.00.  This judgment awarded prejudgment interest at the rate of 8.5%, beginning September 21, 2022, court costs, and postjudgment interest at 8.5%, as well as conditional appellate attorney's fees. On February 5, 2024, the trial court signed an order setting aside the January 8, 2024 judgment.

On March 15, 2024, the trial court signed its Findings of Fact and Conclusions of Law. The court found and concluded that Dudley breached the contract by failing to pay $10,025.93, $33,163.93, and $42,315.60, totaling $85,505.46, and that Cross Roads is entitled to recover attorney's fees in the amount of $54,330.00, prejudgment interest at the rate of 1.5% pursuant to Texas Property Code Chapter 28, and conditional appellate attorney's fees. The court also concluded that Dudley's actions violated Texas Property Code Sections 162.001 and 162.003.

On March 25, 2024, Dudley filed a request for amended and additional findings of fact and conclusions of law complaining that the March 15 findings and conclusions did not support the January 31 judgment. Although the January 31 judgment finds in favor of Cross Roads, Dudley's amended and additional findings and conclusions would support a judgment finding Dudley did not breach the contract; is not liable for breach of fiduciary duty; Chapter 28 does not apply to its project with the City; and Cross Roads failed to adequately plead for prejudgment interest.

On April 18, 2024, the trial court signed an order setting aside the January 31, 2024 judgment, noting in the order that the March 15, 2024 findings of fact and conclusions of law do not support the January 31 judgment.

The order also stated that the court will "sign the revised Judgment consistent with the Court's Findings of Fact and Conclusions of Law."

Also on April 18, 2024, the trial court signed a judgment ordering that Cross Roads recover from Dudley amounts totaling $85,504.44, accruing prejudgment interest at the rate of 1.5% per month, attorney's fees of $35,792.00, court costs, postjudgment interest, and conditional appellate attorney's fees.

Finally, also on April 18, 2024, the trial court signed the Amended and Additional Findings of Fact and Conclusions of Law submitted by Dudley on March 25. As set out above, those findings and conclusions were in favor of Dudley and therefore conflicted with the judgment of April 18.

Cross Roads filed a motion to vacate the Amended and Additional Findings of Fact and Conclusions of Law because they do not support the relief granted in the judgment. Similarly, on May 8, 2024, Dudley filed a request for findings of fact and conclusions of law. About a week later, Dudley filed its motion for new trial asserting that "the repeated procedural defects and process in handling these postjudgment submissions have prejudiced Dudley's appellate rights." Dudley asked the court to vacate the April 18, 2024 judgment and enter a new judgment that comports with the Amended and

Additional Findings of Fact and Conclusions of Law. The trial court rendered no further orders, and Dudley filed its notice of appeal.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In its first issue, Dudley asserts that the judgment must be reformed or reversed because it does not conform to the Amended and Additional Findings of Fact and Conclusions of Law signed on the same day. In its second issue, Dudley contends alternatively that if this Court interprets the trial court's actions as having failed to make findings of fact and conclusions of law applicable to the April 18 judgment, that failure is error.

Dudley cites to the general rule that findings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between them and the judgment, if there is any evidence in the record to support the findings. *See City of Laredo v. R. Vela Exxon, Inc.*, 966 S.W.2d 673, 678 (Tex. App.—San Antonio 1998, pet. denied). Dudley therefore asserts the April 18 Amended and Additional findings and conclusions are controlling. The general rule notwithstanding, due to the procedural history of this case, the question requires further scrutiny.

In *Waters v. Yockey*, 192 S.W.2d 769 (Tex. 1946), the trial court filed two conflicting sets of findings and conclusions after rendition of a single judgment. The Supreme Court had to determine which set controlled before it could

determine if there was a conflict between the findings and judgment. The Court explained that if the trial judge intended the second set to supplement the first set, to be construed together, then no judgment could be based on the findings because they "are materially in conflict." *Id*. at 769. But if the trial court intended the second set of findings to be substituted for the first set of findings, then the first set of findings must be disregarded, and judgment should be based on the second set of findings. *Id*. In reviewing the trial court's findings and conclusions in this case, we determine, as did the *Waters* court, that "[t]he problem presented involves merely the ascertainment of the intention of the trial judge." *Id*.

Procedurally, the case before us traveled a more erratic path than *Waters*. There, two sets of conflicting findings and conclusions were filed after a single judgment. Here, a judgment was rendered, a second judgment was rendered, the first judgment was set aside, findings and conclusions were signed, the second judgment was set aside, then a third judgment was rendered, and finally, a second set of findings and conclusions was signed. The trial court's April 18 order setting aside the second judgment indicated the trial court's intention to sign a revised judgment consistent with the March 15 findings and conclusions. Therefore, that order is tantamount to a reaffirmance of the March 15 findings and conclusions. Yet, on the same date,

the trial court signed Dudley's Amended and Additional findings and conclusions, creating a conflict between the two sets of findings. We apply the *Waters* rationale to determine which set of findings and conclusions the trial court intended to rely on in support of the judgment.

In each of the three judgments, the trial court found that Dudley breached its contract with Cross Roads. The April 18 order setting aside the January 31 judgment indicates that the March 15 findings of fact and conclusions of law favoring Cross Roads were correct. Moreover, with the exception of dollar amounts awarded, there is no difference between the March 15 findings of fact and conclusions of law and the April 18 judgment, which favors Cross Roads. In contrast, Dudley's Amended and Additional Findings of Fact and Conclusions of Law, which when filed addressed the January 31 judgment, would not support a judgment in favor of Cross Roads. In the April 18 order setting aside the January 31 judgment, the trial court indicated its intention to sign a judgment that accurately reflected the findings of fact and conclusions of law signed on March 15. We cannot conclude that the trial court intended the second set of findings should be substituted for the first set of findings, and that the second set should control in the disposition of the case. Instead, we conclude that the trial court's April 18 Amended and Additional Findings of Fact and Conclusions of Law were the result of a mistake.

Therefore, the April 18 Amended and Additional Findings of Fact and Conclusions of Law must be disregarded. *See id.* The April 18 judgment conforms to the March 15 findings of fact and conclusions of law as intended by the trial court. We overrule Dudley's first and second issues.

## PREJUDGMENT INTEREST

In its third issue, Dudley asserts the trial court erred by awarding prejudgment interest according to the Texas Property Code's Prompt Payment Act. Dudley argues that statute does not apply to a public works project pursuant to a government contract. Furthermore, Dudley asserts that Cross Roads failed to properly plead for statutory prejudgment interest. In its fourth issue, Dudley asserts that Cross Roads may not recover equitable prejudgment interest because Cross Roads did not plead for such interest.

An appellate court reviews a trial court's prejudgment interest award under an abuse of discretion standard. *See Bufkin v. Bufkin*, 259 S.W.3d 343, 356 (Tex. App.—Dallas 2008, pet. denied). To determine if there was an abuse of discretion, we must decide if the lower court acted without reference to any guiding rules or principles. *Id.*

Prejudgment interest may be awarded pursuant to an enabling statute or general principles of equity. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998). Where a breach of contract

claim does not fall within any enabling statute, equitable principles govern the award of prejudgment interest. *See Trevino v. City of Pearland*, 531 S.W.3d 290, 297 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Statutory interest may be predicated on a prayer for general damages. *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex. 1987). Where prejudgment interest is sought at common law as an element of the damages, a plaintiff must plead for it. *Id.*

In its petition, Cross Roads presented claims for breach of contract and breach of fiduciary duty. In addition to a request for damages, it pleaded for "interest as allowed by law." In its March 15 conclusions of law, the trial court concluded that "[p]ursuant to Prompt Payment Act, Texas Property Code Chapter 28, Cross Roads is entitled to recover prejudgment interest at the rate of 1.5% each month which accrues from the date that each draw was due until entry of the judgment." The April 18 judgment applied the prejudgment interest scheme set out in the Prompt Payment Act, ordering that Cross Roads recover from Dudley prejudgment interest of 1.5% each month from the date three separate payments were due until the date of the judgment.

Cross Roads did not plead a cause of action based on the Texas Property Code's Prompt Payment Act. *See* TEX. PROP. CODE ANN. §§ 28.001-28.010. After rendition of the January 31, 2024 judgment, Cross Roads filed a "Motion to Reconsider and Reform the Judgment Dated January 31, 2024 or

Alternatively a New Trial" in which it argued that the Act applied and it was entitled to prejudgment interest pursuant to that Act. We disagree.

Section 28.002 requires an "owner" to promptly pay a contractor for work performed pursuant to a contract, and it requires contractors to promptly pay subcontractors for their work upon receipt of payment from the owner. *Id*. § 28.002(a), (b). The Act defines "owner" as a person or entity, other than a governmental entity, with an interest in real property that is improved, for whom an improvement is made, and who ordered the improvement to be made. *Id*. § 28.001(4). Dudley, as general contractor, contracted with the City of College Station, a governmental entity. Therefore, the property code's Prompt Payment Act does not apply.

Cross Roads pleaded a breach of contract claim but has not asserted, in its petition or briefing, that the contract at issue contains a provision allowing it to recover prejudgment interest or that it is entitled to prejudgment interest on the basis of equity. *See Benavidez*, 726 S.W.2d at 25. We conclude that the trial court abused its discretion in awarding prejudgment interest to Cross Roads. *See Bufkin*, 259 S.W.3d at 356. Accordingly, we delete the award from the trial court's judgment. We sustain Dudley's third and fourth issues.

## DUDLEY'S CONTRACTUAL RIGHTS

In its fifth issue, Dudley asserts that, pursuant to its contract with Cross Roads, Dudley has the right to withhold funds as necessary to protect Dudley from loss due to Cross Roads's defective work, to remedy claims made, and to effectuate potential repairs. Dudley contends it had to withhold funds in order to protect itself from potential costs that could be incurred during the eight-year warranty period proposed by the City. Dudley concludes that the evidence is legally and factually insufficient to support a finding that Dudley breached its agreement by failing to make the payments demanded by Cross Roads.

### Standard of Review

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). We review the trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding.

*Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* We credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id.* If there is any evidence of probative force to support the finding, i.e. more than a scintilla, we will overrule the issue. *Haggar Clothing Co. v. Hernandez,* 164 S.W.3d 386, 388 (Tex. 2005) (per curiam).

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.—Tyler 2011, no pet.). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain,* 709 S.W.2d at 176. The reviewing court may not substitute its opinion for that of the trier of fact, as it is the factfinder's

role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

**Applicable Law**

Contract construction presents questions of law we review de novo. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) (per curiam). When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Id*. We interpret contract language according to its plain, ordinary, and generally accepted meaning unless the instrument directs otherwise. *URI, Inc. v. Kleburg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018). Words must be construed in the context in which they are used. *Sundown Energy LP*, 622 S.W.3d at 888. We must consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless. *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

The elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages as a result of the breach. *Levco Constr., Inc.*

*v. Whole Foods Mkt. Rocky Mountain/Sw. L.P.*, 549 S.W.3d 618, 638 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Whether a party has breached a contract is a question of law for the court when the facts of the parties' conduct are undisputed or conclusively established. *Grohman v. Kahlig*, 318 S.W.3d 882, 887 (Tex. 2010).

**Discussion**

Dudley does not dispute that it failed to pay funds it owed Cross Roads under their contract, the amount of those funds, the validity of the contract, or performance by Cross Roads.[1] Thus, our understanding of Dudley's argument is that it is only attacking one element of Cross Roads's breach of contract claim, that is, whether Dudley breached the contract. Without providing us with a roadmap of its legal analysis, Dudley points to one provision in the parties' contract and concludes that the evidence is insufficient to prove Dudley breached the contract. Apparently, Dudley believes that provision justifies its failure to pay the money owed to Cross Roads. This assertion requires us to construe the parties' contract.

In Section 16 of the contract between the City and Dudley, which is entitled "Payment," the parties specified the terms regarding progress payment applications, progress payments, retainage, suspension of payments,

---

[1] Dudley filed a counterclaim for breach of contract which was severed by the trial court and not a part of this appeal.

and withholding funds. Dudley was to submit progress payment applications "showing as completely as practicable the total value of the actual work performed by the Contractor and accepted by the City up to and including the last day of the preceding month." The contract further provides that, on or before the thirtieth calendar day following the City's receipt of a progress payment application from Dudley, the City shall pay Dudley the approved amount of the progress payments. Upon Final Completion and acceptance of the work, the City shall pay the remainder of the balance due, less any retainage, which shall be retained for thirty days from the date of Final Completion.

Pursuant to Paragraph 16.11, the City may, on account of subsequently discovered evidence and in addition to the retainage withheld, withhold funds to such extent as may be necessary to protect itself from loss on account of, inter alia, defective work, claims made or reasonable evidence indicating claims will be made for damage to another by the contractor, or claims made or reasonable evidence indicating claims will be made for damage to third parties.

Section 20 of the contract is entitled "Final Completion." It provides that if the City deems the work Finally Complete, certificates of completion and acceptance shall be issued, and the City shall pay the balance due within thirty

days. Neither final payment nor any acceptance nor certificate shall relieve Dudley of any responsibility for faulty workmanship or materials. Paragraph 25.01 provides that Dudley warrants that all work will be free from faults and defects for one year after issuance of a certificate of Final Completion.

Attachment A to the subcontract between Dudley and Cross Roads provides that the contract between the City and Dudley is incorporated into the Subcontract; payments to Cross Roads shall be made monthly; final payment will be made within fifteen days of acceptance of and payment by the City for the entire contract; and Cross Roads shall reimburse Dudley for any loss or damage which may become due to the City. Paragraph 20 of Attachment A of the subcontract provides that the subcontractor shall reimburse the contractor for any loss or damages which is due to the subcontractor's failure to perform properly.

According to its plain language, the contract anticipates that Dudley and its subcontractors will be paid regularly during the course of the work on the project. The City was to pay Dudley in full within thirty days after the City determines the work is complete. Pursuant to the subcontract, final payment to Cross Roads was due in full within fifteen days of the date Dudley received final payment from the City. Reading these provisions together, Section 16.11's permission to withhold funds worked as a mechanism to address

problems such as defective work and damages to others that may arise during the course of the work on the project. Although the contract allows the City and Dudley to withhold payments in certain circumstances, it is not reasonable to interpret that provision to mean that the payments can be withheld past the contractual due dates for final payments.

Thus, harmonizing and giving effect to all the contract provisions, the option to withhold funds can only be exercised during the work on the project and up until the contractually agreed upon time for final payment to Cross Roads. *See Plains Exploration & Prod. Co.*, 473 S.W.3d at 305.

The date of substantial completion of the project was May 3, 2019. Final completion was due June 2, 2019 but that deadline was not met. Dudley provided an "All Bills Paid Affidavit" to the City, signed on April 7, 2021, although the affidavit noted that Cross Roads and one other subcontractor had not been paid in full. Final approval of the payment and acceptance of the project occurred on April 7, 2021. Although the City never issued a Certificate of Final Completion, Dudley received full and final payment from the City in April 2021. Therefore, pursuant to the terms of the contract, Cross Roads should have been paid in May 2021.

Edward McDonald, the City's project manager on this project, testified that the effect of paying the full contract amount was to close out their contract

with Dudley. The City accepted the project with no conditions. Although in 2018 the City had asked Dudley for an eight-year warranty due to the flaws in the box culvert, the City later waived that requirement and unconditionally accepted the project. McDonald testified that the City is not requiring anything of Dudley that would prevent Dudley from paying Cross Roads.

Michael Ham, Dudley's senior project manager, testified that the City closed the project out and paid Dudley. He testified that Dudley has not suffered any loss from Cross Roads's actions. He explained that Dudley is concerned about loss that may occur in the future and what he termed Dudley's outstanding risk on the project. Ham testified that he

> withheld enough funds that [he] felt like . . . would limit [Dudley's] exposure as much as possible which is pretty much what he had left in the contract. At that point he wasn't producing anything that was giving me an assurance that he would take care of his issues. So we withheld funds to limit our exposure on the amount of cost that it would take to repair the issue.

In two separate emails, both dated June 21, 2019, Ham told Rick Siegert, the owner of Cross Roads, that funding would be withheld until the bond issue was resolved to ensure damages from the box culvert spalling issue are covered.

Richard Dudley, owner of Dudley Construction, Ltd., indicated that his concern is a potential, future problem. He testified that "[t]he problem that I think is going to present itself more likely is the ongoing spalling and repairs of those spalls within the concrete tunnel." Mr. Dudley claimed the liability

continues on because the City never provided a release of liability associated with Cross Roads's repairs of the spalled areas. He wanted either acknowledgment that the work performed was compliant with the contract or assurance that the City will not seek anything further from Dudley related to liability on that issue. Because the City initially requested an eight-year warranty, Dudley wanted protection from loss through that proposed extended warranty period.

Shortly before the trial began in 2023, Dudley inspected the box culvert and determined that some spalling has occurred and repairs are necessary. Mr. Dudley testified that the damages they experienced to date are the costs to perform the two tests in 2023 and the future costs of repairing existing damaged areas.

Section 16.11, which Dudley relies on to justify withholding funds, applies to loss and damage arising before the City determines the job is complete. That provision does not apply to potential damages that might arise in the future, after the City determines the work is complete. The record shows that no loss or damages had been identified as of May 2021, when final payment to Cross Roads was due. Even if the City had not waived its proposed eight-year warranty requirement, Dudley cannot bootstrap the proposed warranty period to Section 16.11.

There is no contractual basis for Dudley to withhold funds from Cross Roads to protect Dudley from potential costs that could be incurred after May 2021. Accordingly, Dudley's justification argument fails. The record conclusively shows, and Dudley does not deny, that Dudley did not pay $85,505.46 to Cross Roads that it was owed under the contract. The evidence is legally and factually sufficient to show Dudley breached the contract. *See Hernandez*, 164 S.W.3d at 388; *Cain*, 709 S.W.2d at 176. We overrule Dudley's fifth issue.

### THE RULE 11 AGREEMENT

In its sixth issue, Dudley contends the trial court abused its discretion by failing to incorporate the protections contemplated in the parties' Rule 11 Agreement. It asserts that its proposed remedy was for Dudley to continue to withhold payment to secure against necessary repairs until June 2, 2027, or until Cross Roads provided a warranty secured by a bond. Dudley argues that the trial court's failure to adopt Dudley's proposed remedy constituted a fundamental change in the contractual positions of the parties.

In the Agreement, Dudley agreed to provide the City and Cross Roads with a video of its January 23, 2020 inspection of the culverts, and Cross Roads agreed it would obtain certain documents from the City. The Agreement further provided that if the City fails or refuses to execute all of the documents

and/or the City does not accept the maintenance agreement and bond provided by Cross Roads by a specified date, "the attorneys will provide the Court with a written report on the documents executed by the City and any arrangements on the Cross Roads' maintenance agreement with bond. The Court will consider this written report in its ruling for judgment." The Agreement was signed on February 10, 2023.

A trial court has a ministerial duty to enforce a valid Rule 11 Agreement. *See Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health and Human Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (per curiam). A trial court's decision regarding enforcement of a Rule 11 Agreement is reviewed for abuse of discretion. *See Mantas v. Fifth Ct. of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (orig. proceeding) (per curiam).

Here, the City did not agree to execute any of the documents referenced in the Agreement. The City was not a party in this case and could not be forced to execute any of the documents presented to it. Under the terms of the Agreement, the trial court was to "consider" the report provided by the parties' attorneys. The trial court was under no obligation to render a judgment that would adopt Dudley's proposed remedy. Based on the wording of the Agreement, the trial court did not fail to enforce it. Dudley has shown no abuse

of discretion regarding the Rule 11 Agreement. *See id.* We overrule Dudley's sixth issue.

## CONCLUSION

Because we determine that the Amended and Additional Findings of Fact and Conclusions of Law must be disregarded, the trial court's judgment need not be reformed to conform with those findings and conclusions. The evidence is legally and factually sufficient to support the trial court's finding that Dudley breached the contract. Further, the trial court did not abuse its discretion regarding enforcement of the parties' Rule 11 Agreement. However, because the trial court erred in awarding prejudgment interest to Cross Roads, we delete the portions of the April 18, 2024 judgment awarding accrued prejudgment interest of 1.5% each month from the date each of three payments were due until the date of the judgment. As modified, we affirm the trial court's judgment.

 

 

STEVE SMITH
Justice

OPINION DELIVERED and FILED: December 23, 2025

Before Chief Justice Johnson,
     Justice Smith, and
     Justice Harris
Affirmed as Modified
CV06



Dudley Constr., Ltd. v. Cross Roads Concrete Servs., Inc.