Diane FISCHER–STOKER, Appellant,

v.

Ronnie STOKER, Appellee.

No. 01–04–00262–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 14, 2005.

Rehearing Overruled Sept. 2, 2005.

Shawn Casey, Shawn Casey & Associates, Houston, TX, for Appellant.

John K. Grubb, John K. Grubb & Assoc., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, KEYES, and BLAND.

## OPINION

EVELYN V. KEYES, Justice.

Appellant, Diane Fischer–Stoker (Diane), appeals from a judgment awarding property to her husband, Ronnie Stoker (Ronnie), appellee. In six issues on appeal, Diane argues that the trial court (1) failed to follow the parties' premarital agreement; (2) erred in awarding Ronnie a portion of increases in 401k plans that were generated by community and separate contributions; (3) failed to make a just and right division; (4) failed to award the community property in a 50/50 division; and (5) erred in awarding attorney's fees to Ronnie. We reverse and remand the cause.

## Background

On July 19, 1991, the parties signed a written Premarital Agreement (Agreement). The Agreement incorporated an exhibit that listed their separate property. Pertinent to this appeal, Diane's separate property included,

2. All assets in the Inland Steel Industries Thrift Plan # 45–278774300 as of July 31, 1991.

4. All shares of Magellan Fund held by Fidelity Investments, IRA Account No. T009182799.

The parties were married on July 20, 1991, the day after the Agreement was executed; they filed for divorce in April 2003. Subsequent to the marriage, the Inland Steel Plan was renamed the Ryerson–Tull Retirement Savings Plan ("Plan"). Diane continued to make contributions from her salary to the Plan during the marriage. The Plan was managed by Fidelity Investments and, at the time of the parties' divorce, had a balance of almost $500,000. As of the date of the divorce, the Magellan Fund IRA Account (the Fidelity Investments IRA) had a different number, 2AJ–439070, and a balance of almost $60,000.

After a trial, the trial court entered a decree of divorce that awarded Ronnie as his separate property:

H–7 50% of all funds on deposit in the Ryerson Tull Retirement Savings Plan Fidelity in the name of Diane Fischer–Stoker, (ENV number OP002035) above

$150,262.66 (Exhibit "A"), as of December 12, 2003, (save and except the $150,262.66 set the wife as her separate property in S–5); and all dividends, income, increases, and decreases on said 50% thereafter.

H–8 50% of all funds in the Fidelity Investments IRA, in the name of Diane Fischer, number 2AJ — 439070, above $15,703.93; (Exhibit "B"), as of December 12, 2003, (save and except the $15,703.93 set the wife as her separate property in S–5) and all dividends, income, increases, and decreases on said 50% thereafter.

The trial court entered findings of fact and conclusions of law in response to Diane's request. Diane challenges conclusions of law 2, 5, 8, and 9. These conclusions state:

2. The Pre–Marital Agreement is a valid, enforceable agreement. The court declares the Pre–Marital Agreement is in full force and effect. The setting aside of the separate property as set forth in the Decree, and the division of the community property in the Decree are in accordance with the Pre–Marital Agreement, and the parties' testimony and evidence thereunder. Additionally, the court further finds that even if the parties did not have a Pre–Marital Agreement, the property set aside to them is their separate property, and that the division of community property is fair and just.

5. Diane Fischer–Stoker's contention that paragraph # 8, Reimbursement of the Premarital Agreement provides that any funds set aside by her to any IRA, retirement plan, or 401(k) plan makes it automatically hers is not correct; that paragraph 8, Reimbursement of the Premarital Agreement applies only when one party's separate estate is used to satisfy the debts or otherwise benefit the separate estate of the party.

8. In connection with the Fidelity Funds Traditional IRA in the name of Diane Fischer 2aj–439070, that $15,703.93 is Diane Fischer–Stoker's separate property and should be set aside to her, and that the entire increase on that account since the date of marriage (approximately $35,67.48) is community property and should be divided equally between the parties.

9. That in connection with the Ryerson–Tull Retirement Savings Plan, Fidelity in the name of Diane Fischer–Stoker (ENV # 0P002037) that $150,262.66 is Diane Fischer–Stoker's separate property and it should be set aside to her and that all increase in this 401(k) above the $150,262.66 is community property and should be divided equally between the parties.

Although unchallenged, the relevant findings of fact provide:

9. The Ryerson–Tull Retirement Savings Plan Fidelity in the name of Diane Fischer–Stoker (EV# 0P002035) had a balance on or about July 1, 1991, of $150,262.66 and a balance as of March 31, 2003 of $494,974.00; and the increase of approximately $344,712.00 was acquired during the term of the marriage.

10. Fidelity Funds Traditional IRA in the name of Diane Fischer–Stoker, 2AJ–439070 had a balance of $15,703.93 at the time of marriage, and had a balance of approximately $51,321.41 at the time of divorce; and the increase of $35,617.48 was acquired during the term of the marriage.

## Standard of Review

In a decree of divorce, the court shall order a division of the community estate in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.001 (Vernon 1998); *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex.App.-Houston [1st Dist.] 1995, writ denied). In effecting a just and right division of the community estate, section 7.001 of the Family Code vests the trial court with broad discretion that will not be reversed on appeal unless the complaining party shows that the trial court clearly abused its discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); *Rafferty*, 903 S.W.2d at 377. The test of whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably, and without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Rafferty*, 903 S.W.2d at 376.

A trial court may order an unequal division of the community property when a reasonable basis exists for granting that relief. *Robles v. Robles*, 965 S.W.2d 605, 621 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The division of property must not be so disproportionate as to be inequitable, and the circumstances must justify awarding more than one-half to one party. *Patt v. Patt*, 689 S.W.2d 505, 507 (Tex.App.-Houston [1st Dist.] 1985, no writ).

In an appeal from a bench trial, we review a trial court's conclusions of law as legal questions, de novo, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.-Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software*, 83 S.W.3d at 794. If we determine that a conclusion of law is erroneous, but that the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.* Unchallenged findings of fact are binding on the court of appeals "unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex.1986).

## The Pre–Marital Agreement and the Contentions of the Parties

Diane argues that the trial court erred by divesting her of her separate property. She contends that the parties' Agreement shows that the two retirement accounts are her separate property and that any increase in those accounts during her marriage to Ronnie is an increase in her separate estate. Diane also contends that any community funds contributed to the retirement accounts during the marriage constituted non-reimbursable gifts to her separate estate and that any increase in the separate property assets due to the contribution of such funds likewise remains her separate property.

The relevant portions of the Agreement provide:

5. **Earnings and Income**

(a) **Income or Property Derived from Separate Property.** All the income or property (whether from personal effort or otherwise) arising from the separate property owned at the date of our marriage by either of us, or that may later be acquired, shall be the separate property of the owner of the separate property that gener-

ated that income, increase, property, or revenue.

(b) **Earnings.** All salary, earnings, and other compensation for personal services or labor received or receivable by either of us, now or in the future, shall be the community property of the parties.

\* \* \* \*

## 8. Reimbursement

Any payment or contributions by one of us to satisfy the debts or otherwise benefit the separate estate of the other shall not give rise to a claim for reimbursement or an interest in any property purchased by those payments unless we otherwise agree in writing. Any right of reimbursement that may arise during our marriage for payments or contributions made to the other's separate estate to the extent any payment is made by one for the benefit of the other shall be presumed to be a gift to the other party's separate estate.

Ronnie argues that the trial court correctly determined that the increases in the retirement accounts were community property. Ronnie contends that paragraph 5(b) provides that earnings shall be the community property of the parties. He asserts on the basis of paragraph 5(b) that because all property is presumed to be community property, "clearly any 401(k) and IRA contributions made during the marriage are presumed to be community property."

### Analysis

■ Ronnie is correct that all property is generally presumed to be community property. *See McClary v. Thompson,* 65 S.W.3d 829, 836 (Tex.App.-Fort Worth 2002, pet. denied) (holding that contributions and interest earned during the mar-

riage constitute community property). However, the Texas Family Code provides that spouses may agree to partition or exchange any part of their community property as they desire. TEX. FAM.CODE ANN. § 4.102 (Vernon Supp.2004–2005); *Winger v. Pianka,* 831 S.W.2d 853, 859 (Tex.App.-Austin 1992, writ denied). To exchange such property, the parties must do so by written agreement. TEX. FAM. CODE ANN. § 4.104 (Vernon 1998); *Winger,* 831 S.W.2d at 859. Here, the parties had a written agreement establishing the disposition of certain real and personal property. The trial court found that the parties executed the Agreement one day before marriage and that the Agreement was valid and enforceable. Because neither party now contends that the Agreement is invalid or is not binding, we must determine the effect of the Agreement on the property interests of the parties.

■ A premarital agreement should be interpreted in accordance with the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Pearce v. Pearce,* 824 S.W.2d 195, 200 (Tex.App.-El Paso 1992, writ denied). If the agreement is so worded that it can be given a certain legal meaning, it is not ambiguous and the courts will construe it as a matter of law. *Coker,* 650 S.W.2d at 393.

■ Parties to a contract intend that each clause should have an effect. *See Heritage Res. v. NationsBank,* 939 S.W.2d 118, 121 (Tex.1996). Contract terms should be given their plain, ordinary, and generally accepted meaning unless the agreement shows that they are intended in a different or technical sense. *See id.; Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W.2d 554, 557 (1953), *cert. denied,* 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1081 (1954). Courts

construe marital property agreements narrowly in favor of the community estate. *See, e.g., Byrnes v. Byrnes,* 19 S.W.3d 556, 558 (Tex.App.-Fort Worth 2000, no pet.).

### The Ryerson–Tull Retirement Savings Plan

The trial court awarded Ronnie as his separate property 50% of all funds in the Plan as of the date of the divorce above the $150,262.66 determined to have been in the Plan at the beginning of the marriage, plus all "dividends, income, increases, and decreases on said 50% thereafter."

■ Exhibit "B" to the parties' Agreement stipulates that "[a]ll assets in the Inland Steel Industries Pension Plan [the Ryerson–Tull Retirement Savings Plan] as of July 31, 1991" are the separate property of Diane. The parties thus agreed that the $150,262.66 in the Plan as of that date was Diane's separate property. But, the agreement did not stop there. Paragraph 5(a) of the Agreement provided that "[a]ll the income or property (whether from personal effort or otherwise) arising from the separate property owned at the date of [the] marriage ... or that may later be acquired, shall be the separate property of the owner of the separate property that generated that income, increase, property, or revenue." Interest and dividends paid on investments, whether the investments are separate property or not, are income under Texas law and are generally community property. *See Alsenz v. Alsenz,* 101 S.W.3d 648, 653 (Tex.App.-Houston [1st Dist.] 2003, pet. denied). In this case, however, the plain language of the parties' Agreement decreed that all income earned by the Plan during the marriage was Diane's separate property—not community property subject to equitable division by the court upon divorce of the parties as Ronnie argues and the trial court held.

■ Moreover, paragraph 5(a) expressly provides that "all income or property (whether from personal effort or otherwise) ... that may be later acquired, shall be the separate property of the owner of the separate property that generated that income, increase, property, or revenue." This provision makes no sense unless separate property can later be acquired by the separate property estate, which in the case of the Plan, implies the addition of assets to the Plan. By agreement of the parties, all assets in that Plan were separate property at the inception of the marriage and all later-acquired assets of the Plan took on the character of separate property. Thus, Diane was entitled to all assets in the account as her separate property. *See Roach v. Roach,* 672 S.W.2d 524, 530–31 (Tex.App.-Amarillo 1984, no writ) ("[T]he separate or community character of property is determined not by the acquisition of the final title ... but by the origin of title to the property.").

■ Paragraphs 5(b) and 8 reinforce this interpretation of the Agreement. Although paragraph 5(b) recognizes and agrees that all "salary, earnings, and other compensation for personal services or labor" of the parties are community property, paragraph 8 provides that "any payment or contributions by one of us to ... benefit the separate estate of the other shall not give rise to a claim for reimbursement or an interest in any property purchased by those payments unless we otherwise agree in writing." The only reasonable interpretation of that language is that it is intended to ensure that if one party's separate property or that party's share of community property is paid or contributed to the separate estate of the other party, that contribution shall be a gift to the other person's separate estate and there will be no reimbursement at divorce, as there otherwise would be under

common law, unless there is some later agreement to the contrary. Here there is no later agreement; therefore, Ronnie's share in any community property—such as Diane's salary—that was contributed to the Plan during the marriage was, by agreement, a gift to Diane's separate property and not community property subject to division in the divorce decree or entitling Ronnie to reimbursement.[1]

The trial court erred in holding that Ronnie was entitled to any part of the assets in Diane's Plan as of the date of the divorce or any of the "dividends, income, increases, and decreases" in the assets of the Plan in the future.

### Fidelity Investments IRA

 The trial court likewise awarded Ronnie "50% of all funds in the Fidelity Investments IRA in the name of Diane Fischer, number 2AJ–439070, above $15,703.93," i.e., 50% of all assets of the Fidelity Investments IRA above the value of the Fidelity Investments IRA assets at the beginning of the marriage, plus "all dividends, income, increases and decreases on said 50% thereafter." Again, the parties' Agreement expressly stipulates that "[a]ll shares of Magellan Fund held by Fidelity Investments IRA Account No. T009182799" are Diane's separate property. Diane testified that her Magellan Fund IRA Account No. T009182799 and her Fidelity Investments IRA 2AJ–439070 were one and the same account, and there was no contrary evidence. She also testified that no contributions were made to the Fidelity Investments IRA during the marriage, and, again, there was no contrary evidence.

Applying the reasoning above, we conclude that Diane's Fidelity Investments IRA, including any increase in the value of the Fidelity Investments IRA during the marriage, is her separate property and that Ronnie has no community property interest therein.

Ronnie argues that the inception of title rule does not apply to retirement plans. As a general matter, he is correct. See, e.g., McClary, 65 S.W.3d at 834–36. However, his argument entirely overlooks the parties' Agreement. A principal purpose of that Agreement, evident from its face, is to ensure that Diane's retirement accounts shall remain her separate property during the marriage, that any contributions to those accounts of Ronnie's separate property or his share of community property shall be non-reimbursable gifts to her separate estate, and that any increase in assets in those accounts and any income from them shall likewise be her separate property.

Ronnie also points us to paragraph 7 of the Agreement governing "Future Property." He argues that Diane does not take into account the last sentence of paragraph 7(a), "Jointly Owned Property," which provides,

> In the event the parties fail to enter into an agreement designating the percentage owned by the separate estate of DIANE FISCHER, the separate estate

---

1. Ronnie also argues that paragraph 8 of the Agreement—providing that contributions by a party to benefit the separate estate of the other party shall be treated as gifts to the separate property estate and "shall not give rise to a claim for reimbursement or an interest in any property purchased by those payments unless we otherwise agree in writing"—is inapplicable because "the reimbursement clause was designed to eliminate common law claims for economic contribution which were evolving and have now been codified in Family Code § 3.401 et seq." Ronnie does not make any argument or cite any authority in support of this apparent contention that later codification abrogates the parties' agreement regarding economic contribution. This contention is therefore waived. See Tex.R.App. P. 38.1(h), 38.2(a)(1).

of RONNIE H. STOKER, and the community estate, the law relating to "tracing" shall be applicable.

Ronnie argues that part of the Plan and the Fidelity Investment IRA were acquired after the marriage, that the parties failed to enter an agreement designating the percentage of the Plan and the Fidelity Investments IRA owned by his separate estate and the percentage owned by Diane's separate estate, and that Diane was therefore required to trace the percentage of each retirement account that was her separate property, but she did not. Thus, Ronnie contends that any part of each retirement account acquired during the marriage and any interest earned or appreciation in value of the retirement account must also be considered community property. We disagree with Ronnie's interpretation of paragraph 7(a).

■ Paragraph 7, "Future Property," provides in its entirety:

(a) **Jointly Owned Property.** It is our intent that during our marriage we will from time to time by mutual agreement have the opportunity to acquire property. In the event separate property of one of the parties is used to acquire property during the marriage, title to the property shall be taken in the name of that party, and the property shall be the separate property of that party. In the event separate property of either of the parties is used, or separate property plus community property is used to purchase property, title shall be taken in both names. At the time of the purchase the parties shall agree in writing what percentage of the property is the separate property of DIANE FISCHER, what percentage of the property is the separate property of RONNIE H. STOKER, and what percentage of the property shall be community property. In the event the parties fail to enter into

an agreement designating the percentage owned by the separate estate of DIANE FISCHER, the separate estate of RONNIE H. STOKER, and the community estate, the law relating to "tracing" shall be applicable.

Paragraph 7 expressly applies to "Future Property" and paragraph 7(a) expressly applies to "Jointly Owned Property." Diane's retirement accounts were both separate property at the time of the marriage. Under the inception of title doctrine, the retirement accounts did not lose their character as separate property because of the marriage. The question is whether contributions of community property to either retirement account created a community property interest in the retirement account subject to equitable division in the divorce. Paragraph 8 of the Agreement provided that they did not. When the last sentence of paragraph 7(a) is placed in context, it is clear that paragraph 7(a) concerns an entirely different matter—the parties' acquisition during marriage of new, jointly owned property with either separate property funds or a combination of separate and community funds—and not the contribution of community funds to the separate estate of a party. We conclude that paragraph 7(a) is inapplicable to this case.

We hold that the trial court erred in characterizing large portions of Diane's separate estate—the increases in the assets of the Plan and the Fidelity Investments IRA—as community property and in awarding Ronnie 50% of the value of the Plan and the Fidelity Investments IRA at the time of the divorce, minus their value at the time of the marriage, plus "all dividends, income, increases and decreases on said 50% thereafter." Under the trial court's reasoning, the parties' Agreement had no effect because, prior to the marriage, Diane's retirement accounts were

indisputably her separate property, and Ronnie had no interest in them. The effect of the trial court's judgment was thus to nullify the parties' agreement that contributions to the separate estate of a party would be a gift to the separate estate that would not create a property interest in the separate estate or a right to reimbursement, and to reinstate the common law presumption that all property is community property subject to equitable division by the court.

A trial court lacks authority to divest a party of separate property in a divorce decree. *See Cameron v. Cameron,* 641 S.W.2d 210, 220 (Tex.1982). "[W]hen a mischaracterization has more than a *de minimis* effect upon the trial court's division, the appellate court must remand the community estate to the trial court for a just and right division based upon the correct characterization of the property." *McElwee v. McElwee,* 911 S.W.2d 182, 190 (Tex.App.-Houston [1st Dist.] 1995, pet. denied). "Once reversible error affecting the 'just and right' division of the community estate is found, the court of appeals must remand the entire community estate for a new division." *Jacobs v. Jacobs,* 687 S.W.2d 731, 733 (Tex.1985).

We sustain Diane's first, second, third, fourth and fifth issues on appeal.

### Attorney Fees

In her sixth issue on appeal, Diane argues that the trial court erred by awarding attorney's fees to Ronnie that were incurred before judgment as part of temporary orders pending appeal.

At the end of the trial, the trial court ordered each party to be responsible for his own attorney's fees. Diane contends that after the entry of judgment, Ronnie timely requested temporary orders pending appeal pursuant to section 6.709 of the Texas Family Code. *See* TEX. FAM.CODE ANN. § 6.709 (Vernon 1998). According to Diane, a hearing was conducted, and the court awarded Ronnie $10,750.00 in attorney's fees.

The appellate record does not contain the trial court's temporary orders or any record of a hearing that occurred after entry of judgment. Accordingly, we conclude that Diane has waived the complaint for failing to bring forth a sufficient record to show that the trial court abused its discretion. *See* TEX.R.APP. P. 33.1; *Cruikshank v. Consumer Direct Mortgage,* 138 S.W.3d 497, 499 (Tex.App.-Houston [14th Dist.] 2004, pet. denied).

We overrule Diane's sixth issue on appeal.

### Conclusion

We reverse the judgment of the trial court and remand the case for a new trial on the just and right division of the parties' property in accordance with this opinion. We deny all outstanding motions.