COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-358-CV

 

 

GORDON WAYNE PORTER                                                    APPELLANT

 

                                                   V.

 

KIMBERLY ANN PORTER                                                         APPELLEE

 

                                              ------------

 

             FROM
THE 16TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------








After a
bench trial, the trial court granted a divorce to Appellant Gordon Wayne Porter
and Appellee Kimberly Ann Porter.  In two
issues, Gordon contends that the trial court erred by mischaracterizing
separate property as community property and abused its discretion by failing to
make a just and right division of the marital estate.  Because we cannot conclude that the trial
court erred or abused its discretion, we affirm the trial court=s
judgment. 

I.  Relevant Findings of Fact and Conclusions of
Law

In the
case before us, the trial court found that

$       
[Gordon] alleged that he had a separate property interest in several
equity accounts[;]

 

$       
[Gordon] failed to show by clear and convincing evidence the value of
these assets on the date of the marriage[;]

 

$       
[Gordon] commingled community assets with his alleged separate
assets[; and]

 

$       
[Gordon] failed to provide clear and convincing tracing evidence to
segregate community and alleged separate assets.

 

The trial court concluded that
Gordon failed to prove by clear and convincing evidence what portion, if any,
of the equity accounts were separate property.

II.  Characterization of Accounts

In his
first issue, Gordon argues that the trial court erred by refusing to recognize
his separate claim in and to each of the following accounts:

$       
Capital Appreciation;

$       
Select Gold;

$       
Fidelity Traditional IRA;

$       
Informix stock options rolled into Fidelity
Account Number X36B17xxxx;








$       
Informix 401(k) rolled into Fidelity IRA Account
Number 13xB2xxxxx;

$       
American Funds Account Number 88xxxxxxxx; and

$       
DWS Scudder Account.

A.  Substantive Law

As this
court has previously explained,

Under Texas law, property possessed by either
spouse during or on dissolution of the marriage is presumed to be community
property, absent clear and convincing evidence to the contrary.  The characterization of property as either
community or separate is determined by the inception of title to the
property.  Inception of title occurs when
a party first has a right of claim to the property by virtue of which title is
finally vested. . . .

 

In order to overcome the community presumption,
the burden is on the spouse claiming certain property as separate to trace and
clearly identify the property claimed to be separate.  The burden of tracing is a difficult, but not
impossible, burden to sustain.  Tracing
involves establishing the separate origin of the property through evidence
showing the time and means by which the spouse originally obtained possession
of the property. 

 

. . . Separate property will retain its character
through a series of exchanges so long as the party asserting separate ownership
can overcome the presumption of community property by tracing the assets on
hand during the marriage back to property that, because of its time and manner
of acquisition, is separate in character. 
However, if the evidence shows that separate and community property have
been so commingled as to defy resegregation and identification, the community
presumption prevails.

 








When tracing separate property, it is not enough
to show that separate funds could have been the source of a subsequent deposit
of funds.  Moreover, as a general rule,
mere testimony that property was purchased with separate funds, without any
tracing of the funds, is insufficient to rebut the community presumption.  Any doubt as to the character of property
should be resolved in favor of the community estate.[2]

 

When
findings of fact are filed and are unchallenged, they occupy the same position
and are entitled to the same weight as the verdict of a jury; they are binding
on an appellate court unless the contrary is established as a matter of law or
there is no evidence to support the finding.[3]

B.  Evidence and Analysis

Gordon
relies on his own testimony about the accounts, the exhibits he introduced, and
Kimberly=s
testimony that he would be the person to ask about the challenged accounts, but
he does not directly challenge the trial court=s
findings of commingling and insufficient tracing.








Kimberly
testified that she did not know how much money was in the accounts when they
married and that she did not think that A[they]
had maybe all of these [accounts]@ but
that Gordon Awould be able to tell you.@  When questioned whether Gordon A[w]ould
. . . be the only one that would know that information or have access to that
information, A she answered, AI would
think so.@ 
When questioned on cross-examination whether the investments occurred
both before and during the marriage, she replied, AI wouldn=t think
very much pre[-] because he started that job right out of college, so there was
no pre jobs,@ and she answered, ACorrect,@ to the
question, AHe would be the best one to
testify as to the origin of those funds, correct?@

1.  Capital Appreciation, Select Gold, and
Fidelity Traditional IRA 

The
evidence shows that the Fidelity Traditional IRA is made up of holdings in
three separate funds:  Capital
Appreciation, Magellan, and Select Gold. 
The Magellan fund is not at issue in this appeal.  Kimberly testified that she believed that the
Fidelity Traditional IRA originated from Gordon=s
employment at Informix.  Gordon testified
that he began working with Informix in September 1988 but that he put $1,000 in
the Capital Appreciation fund while he was at TI.  He testified that after the marriage, he put
$1,000 into another Capital Appreciation fund. He testified that the two
Capital Appreciation funds were merged about two years after the marriage.  As of October 31, 2007, the Capital
Appreciation fund had a value of $14,733.47. 
Gordon believed that the Capital Appreciation fund was one-half his
separate property and one-half community property based on his two equal but
separately timed deposits.








Gordon
also testified that in 1988, he put $500 into the Select Gold fund, which he
testified is or was also known as the Precious Metals fund; that Anothing
else ha[d] been added to that@; and
that A[t]he
Gold is 100 percent prior to marriage.@[4]  But our review of the record shows that the
Select Gold fund has more shares now than it did before the marriage, and there
is no explanation in the record for why the number of shares increased.  While stock splits and stock dividends retain
the character of the original stock,[5]
shares acquired after the marriage with community funds would be community
property.[6]


Similarly,
the Fidelity Traditional IRA contained earned, tax-deferred income.  It is unclear from the record how this income
is apportioned among the three funds, much less between the community and
separate estates.  Interest income and
cash dividends earned during the marriage on separate property are community
property.[7]








2.  Stock Option Rollover

Gordon
testified that he spent about $22,000, including community monies and money
borrowed from his father, to exercise 10,000 of 15,000 Informix stock options
(losing 5,000 for his failure to exercise within thirty days of termination)
and Aafter
that, they rolled right into the Fidelity [Account Number X36B17xxxx].@  Gordon believed that this account had a
one-third separate, two-thirds community property split.  He testified that he based this belief on the
contention that he had exercised options awarded prior to marriage under a FIFO
system, but the record does not contain computations or evidence explaining his
conclusions.  The record does show,
however, that the Fidelity Account Number X36B17xxxx
contains earned cash dividends.  Cash
dividends on separate property are community property.[8]

3.  401(k) Rollover








Gordon
testified that he Ainvested the maximum amount [he]
could@ into
his 401(k) each pay period at Informix. 
When he left Informix, he rolled his 401(k) into a Fidelity IRA.  At trial, he claimed that 70% of the fund was
community property and that 30% of the fund was his separate property,
apportioned according to his length of employment before and after
marriage.  The record shows that Gordon
had worked at Informix about ten years and had worked there for about two and a
half years before their marriage.  But
the record contains no computations of how Gordon arrived at these
percentages.  Further, the record shows
that the Fidelity IRA into which he rolled over his Informix 401(k) balance has
received cash dividends.  Again, cash
dividends on separate property are community property.[9]

4.  American Funds and DWS Scudder Fund

Kimberly
testified that she thought both the American Funds account and the DWS Scudder
account originated from Gordon=s
employment at Informix.  Gordon testified
that the American Funds account was begun before he was married and that he had
not put any money into it after the marriage. 
He believed that the value at the time of the divorce was all his
separate property.








Gordon
testified that he established the DWS Scudder account before the marriage and
put in an additional $500 after the marriage, so of the value at the time of
divorce, he Aattributed $2,500 more or less
to be [his] separate property and $500 to be the community=s share.@  Our review of Gordon=s
exhibits shows, however, that both the American Funds account and the DWS
Scudder account contain earned Aincome
dividends,@ that is, community property.[10]

C.  Resolution

Because
evidence in the record supports the trial court=s
findings that Gordon commingled funds and did not provide sufficient tracing
evidence to show exactly how much, if any, of the property in the various
accounts was his separate property, those unchallenged findings are binding.[11]  We therefore conclude that the trial court
did not abuse its discretion by upholding the community presumption.  Further, in the interest of justice, to the
extent that Gordon=s global challenge somehow
includes a complaint about the findings of commingling and inadequate tracing,
we nevertheless cannot conclude, based on our review of the law and the record,
that the trial court abused its discretion in upholding the community
presumption.  We therefore overrule
Gordon=s first
issue.








III.  Division of Property

In his second
issue, Gordon contends that because of the alleged errors set forth in his
first issue, the trial court failed to make a just and right division of
property.  Because we overruled Gordon=s first
issue, we also overrule this issue.

IV.  Conclusion

Having
overruled both of Gordon=s issues, we affirm the trial
court=s
judgment.

PER CURIAM

 

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  February 4, 2010











[1]See Tex. R. App. P. 47.4.





[2]Boyd v. Boyd, 131 S.W.3d 605, 612
(Tex. App.CFort Worth 2004, no pet.)
(citations omitted).





[3]McGalliard v. Kuhlmann, 722 S.W.2d 694, 696
(Tex. 1986); Raman Chandler Props., L.C. v. Caldwell=s Creek Homeowners Ass=n, Inc., 178 S.W.3d 384, 390
(Tex. App.CFort Worth 2005, pet.
denied).





[4]We note that Gordon=s Exhibits Nos. 3 and 4,
which according to the testimony were records of investments at Fidelity with
regard to the Capital Appreciation and the Select Gold fund, were offered but
not admitted into evidence.





[5]Tirado v. Tirado, 357 S.W.2d 468, 473
(Tex. Civ. App.CTexarkana 1962, writ dism=d).





[6]See Tex. Fam. Code Ann. ' 3.002 (Vernon
2006).





[7]Id.; see also Fischer‑Stoker
v. Stoker, 174 S.W.3d 272, 279 (Tex. App.CHouston [1st Dist.] 2005,
pet. denied) (A[D]ividends paid on
investments, whether the investments are separate property or not, are income
under Texas law and are generally community property.@); McClary v. Thompson,
65 S.W.3d 829, 834 (Tex. App.CFort Worth 2002, pet. denied); Perez v. Perez,
No. 09-06-00521-CV, 2007 WL 5187895, at *3 (Tex. App.CBeaumont May 22, 2008,
pet. denied) (mem. op.) (AInterest earned on
separate bank accounts is community property.@).





[8]See Tex. Fam. Code Ann. ' 3.002; Fischer‑Stoker,
174 S.W.3d at 279.





[9]See Tex. Fam. Code Ann. ' 3.002; Fischer‑Stoker,
174 S.W.3d at 279.





[10]See Tex. Fam. Code Ann. ' 3.002; Fischer‑Stoker,
174 S.W.3d at 279; see also Perez, 2007 WL 5187895, at *3.





[11]See McGalliard, 722 S.W.2d at 696; Raman
Chandler Props., L.C., 178 S.W.3d at 390.