

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-08-358-CV

GORDON WAYNE PORTER                                                    APPELLANT

V.

KIMBERLY ANN PORTER                                                      APPELLEE

------------

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

After a bench trial, the trial court granted a divorce to Appellant Gordon Wayne Porter and Appellee Kimberly Ann Porter. In two issues, Gordon contends that the trial court erred by mischaracterizing separate property as community property and abused its discretion by failing to make a just and right

---

[1] ... *See* Tex. R. App. P. 47.4.

division of the marital estate.  Because we cannot conclude that the trial court erred or abused its discretion, we affirm the trial court's judgment.

I.  Relevant Findings of Fact and Conclusions of Law

In the case before us, the trial court found that

- [Gordon] alleged that he had a separate property interest in several equity accounts[;]

- [Gordon] failed to show by clear and convincing evidence the value of these assets on the date of the marriage[;]

- [Gordon] commingled community assets with his alleged separate assets[; and]

- [Gordon] failed to provide clear and convincing tracing evidence to segregate community and alleged separate assets.

The trial court concluded that Gordon failed to prove by clear and convincing evidence what portion, if any, of the equity accounts were separate property.

II.  Characterization of Accounts

In his first issue, Gordon argues that the trial court erred by refusing to recognize his separate claim in and to each of the following accounts:

- Capital Appreciation;

- Select Gold;

- Fidelity Traditional IRA;

- Informix stock options rolled into Fidelity Account Number X36–17xxxx;

- Informix 401(k) rolled into Fidelity IRA Account Number 13x–2xxxxx;

- American Funds Account Number 88xxxxxxxx; and

- DWS Scudder Account.

A. Substantive Law

As this court has previously explained,

Under Texas law, property possessed by either spouse during or on dissolution of the marriage is presumed to be community property, absent clear and convincing evidence to the contrary. The characterization of property as either community or separate is determined by the inception of title to the property. Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested. . . .

In order to overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate. The burden of tracing is a difficult, but not impossible, burden to sustain. Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse originally obtained possession of the property.

. . . Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. However, if the evidence shows that separate and community property have been so commingled as to defy resegregation and identification, the community presumption prevails.

When tracing separate property, it is not enough to show that separate funds could have been the source of a subsequent deposit of funds. Moreover, as a general rule, mere testimony that

3

property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. Any doubt as to the character of property should be resolved in favor of the community estate.[2]

When findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as the verdict of a jury; they are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding.[3]

B. Evidence and Analysis

Gordon relies on his own testimony about the accounts, the exhibits he introduced, and Kimberly's testimony that he would be the person to ask about the challenged accounts, but he does not directly challenge the trial court's findings of commingling and insufficient tracing.

Kimberly testified that she did not know how much money was in the accounts when they married and that she did not think that "[they] had maybe all of these [accounts]" but that Gordon "would be able to tell you." When questioned whether Gordon "[w]ould . . . be the only one that would know that information or have access to that information," she answered, "I would think

---

[2]... *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.) (citations omitted).

[3]... *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 390 (Tex. App.—Fort Worth 2005, pet. denied).

so." When questioned on cross-examination whether the investments occurred both before and during the marriage, she replied, "I wouldn't think very much pre[-] because he started that job right out of college, so there was no pre jobs," and she answered, "Correct," to the question, "He would be the best one to testify as to the origin of those funds, correct?"

1. Capital Appreciation, Select Gold, and Fidelity Traditional IRA

The evidence shows that the Fidelity Traditional IRA is made up of holdings in three separate funds: Capital Appreciation, Magellan, and Select Gold. The Magellan fund is not at issue in this appeal. Kimberly testified that she believed that the Fidelity Traditional IRA originated from Gordon's employment at Informix. Gordon testified that he began working with Informix in September 1988 but that he put $1,000 in the Capital Appreciation fund while he was at TI. He testified that after the marriage, he put $1,000 into another Capital Appreciation fund. He testified that the two Capital Appreciation funds were merged about two years after the marriage. As of October 31, 2007, the Capital Appreciation fund had a value of $14,733.47. Gordon believed that the Capital Appreciation fund was one-half his separate property and one-half community property based on his two equal but separately timed deposits.

Gordon also testified that in 1988, he put $500 into the Select Gold fund, which he testified is or was also known as the Precious Metals fund; that "nothing else ha[d] been added to that"; and that "[t]he Gold is 100 percent prior to marriage."[4] But our review of the record shows that the Select Gold fund has more shares now than it did before the marriage, and there is no explanation in the record for why the number of shares increased. While stock splits and stock dividends retain the character of the original stock,[5] shares acquired after the marriage with community funds would be community property.[6]

Similarly, the Fidelity Traditional IRA contained earned, tax-deferred income. It is unclear from the record how this income is apportioned among the three funds, much less between the community and separate estates. Interest income and cash dividends earned during the marriage on separate property are community property.[7]

---

[4] ... We note that Gordon's Exhibits Nos. 3 and 4, which according to the testimony were records of investments at Fidelity with regard to the Capital Appreciation and the Select Gold fund, were offered but not admitted into evidence.

[5] ... *Tirado v. Tirado*, 357 S.W.2d 468, 473 (Tex. Civ. App.—Texarkana 1962, writ dism'd).

[6] ... *See* Tex. Fam. Code Ann. § 3.002 (Vernon 2006).

[7] ... *Id.*; *see also Fischer-Stoker v. Stoker*, 174 S.W.3d 272, 279 (Tex.

## 2. Stock Option Rollover

Gordon testified that he spent about $22,000, including community monies and money borrowed from his father, to exercise 10,000 of 15,000 Informix stock options (losing 5,000 for his failure to exercise within thirty days of termination) and "after that, they rolled right into the Fidelity [Account Number X36–17xxxx]." Gordon believed that this account had a one-third separate, two-thirds community property split. He testified that he based this belief on the contention that he had exercised options awarded prior to marriage under a FIFO system, but the record does not contain computations or evidence explaining his conclusions. The record does show, however, that the Fidelity Account Number X36–17xxxx contains earned cash dividends. Cash dividends on separate property are community property.[8]

## 3. 401(k) Rollover

App.—Houston [1st Dist.] 2005, pet. denied) ("[D]ividends paid on investments, whether the investments are separate property or not, are income under Texas law and are generally community property."); *McClary v. Thompson*, 65 S.W.3d 829, 834 (Tex. App.—Fort Worth 2002, pet. denied); *Perez v. Perez*, No. 09-06-00521-CV, 2007 WL 5187895, at *3 (Tex. App.—Beaumont May 22, 2008, pet. denied) (mem. op.) ("Interest earned on separate bank accounts is community property.").

[8] ... *See* Tex. Fam. Code Ann. § 3.002; *Fischer-Stoker*, 174 S.W.3d at 279.

Gordon testified that he "invested the maximum amount [he] could" into his 401(k) each pay period at Informix. When he left Informix, he rolled his 401(k) into a Fidelity IRA. At trial, he claimed that 70% of the fund was community property and that 30% of the fund was his separate property, apportioned according to his length of employment before and after marriage. The record shows that Gordon had worked at Informix about ten years and had worked there for about two and a half years before their marriage. But the record contains no computations of how Gordon arrived at these percentages. Further, the record shows that the Fidelity IRA into which he rolled over his Informix 401(k) balance has received cash dividends. Again, cash dividends on separate property are community property.[9]

4. American Funds and DWS Scudder Fund

Kimberly testified that she thought both the American Funds account and the DWS Scudder account originated from Gordon's employment at Informix. Gordon testified that the American Funds account was begun before he was married and that he had not put any money into it after the marriage. He believed that the value at the time of the divorce was all his separate property.

---

[9] ... *See* Tex. Fam. Code Ann. § 3.002; *Fischer-Stoker*, 174 S.W.3d at 279.

Gordon testified that he established the DWS Scudder account before the marriage and put in an additional $500 after the marriage, so of the value at the time of divorce, he "attributed $2,500 more or less to be [his] separate property and $500 to be the community's share." Our review of Gordon's exhibits shows, however, that both the American Funds account and the DWS Scudder account contain earned "income dividends," that is, community property.[10]

C. Resolution

Because evidence in the record supports the trial court's findings that Gordon commingled funds and did not provide sufficient tracing evidence to show exactly how much, if any, of the property in the various accounts was his separate property, those unchallenged findings are binding.[11] We therefore conclude that the trial court did not abuse its discretion by upholding the community presumption. Further, in the interest of justice, to the extent that Gordon's global challenge somehow includes a complaint about the findings of commingling and inadequate tracing, we nevertheless cannot conclude, based on our review of the law and the record, that the trial court abused its

---

[10] *See* Tex. Fam. Code Ann. § 3.002; *Fischer-Stoker*, 174 S.W.3d at 279; *see also Perez*, 2007 WL 5187895, at *3.

[11] *See McGalliard*, 722 S.W.2d at 696; *Raman Chandler Props., L.C.*, 178 S.W.3d at 390.

9

discretion in upholding the community presumption.   We therefore overrule

Gordon's first issue.

III.  Division of Property

In his second issue, Gordon contends that because of the alleged errors set forth in his first issue, the trial court failed to make a just and right division of property.  Because we overruled Gordon's first issue, we also overrule this issue.

IV.  Conclusion

Having overruled both of Gordon's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED:  February 4, 2010

11