

# NUMBER 13-16-00349-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **ROBERT MICHELENA,** | **Appellant,** |
| **v.** | |
| **MONICA MICHELENA,** | **Appellee.** |

### On appeal from the 357th District Court
### of Cameron County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Hinojosa**
**Memorandum Opinion by Justice Hinojosa**

This appeal stems from the divorce between appellant Robert Michelena and appellee Monica Michelena. By six issues, Robert contends that the trial court erred by: (1) not abiding by the couple's prenuptial agreement and characterizing two separate assets as community property; (2) failing to assess the value of the community estate as

of the time of the divorce; (3) granting prejudgment interest not requested in the pleadings; (4) awarding 100% of any undisclosed assets of the parties to the party not in possession or control of the asset; (5) granting Monica a judgment of $197,853.98 to equalize the division of community property; and (6) granting a disproportionate share of the community property to Monica. We affirm as modified in part and reverse and render in part.

## I.  BACKGROUND

Monica and Robert signed an "Agreement in Contemplation of Marriage" on August 23, 1994. They married on August 27, 1994. Monica filed for divorce on March 18, 2005, and Robert countersued shortly thereafter. The divorce was considered by a jury and a verdict was returned on November 15, 2006. The decree was issued on July 23, 2009.

This is the fifth time this case has come before our Court. In *Michelena v. Michelena*, No. 13-09-00588-CV, 2012 WL 3012642 (Tex. App.—Corpus Christi–Edinburg June 15, 2012, no pet.) (mem. op.) ("*Michelena I*"), we considered issues related to separate and community property designations, as well as child custody. In that opinion, we affirmed the divorce decree in part, but reversed the division of certain assets and remanded for a partial new trial. *Id*. at *10–20. In *In re Michelena*, No. 13-14-00052-CV, 2014 WL 2462851 (Tex. App.—Corpus Christi–Edinburg Mar. 17, 2014, orig. proceeding), we denied a petition for writ of mandamus that contended the trial court abused its discretion in denying a plea of abatement based on dominant jurisdiction. *Id*. at *1. In *Michelena v. Michelena*, No. 13-13-00036-CV, 2015 WL 525182 (Tex. App.—

Corpus Christi–Edinburg Jan. 8, 2015, no pet.) (mem. op.) ("*Michelena II*"), we considered legal challenges to an enforcement order concerning educational and medical expenses for the parties' minor child. And most recently, in *Michelena v. Michelena*, No. 13-17-00572-CV, 2017 WL 6379834 (Tex. App.—Corpus Christi–Edinburg Dec. 14, 2017, no pet.) (mem. op.), we dismissed the appeal because it was not taken from a final, appealable order. *Id*. at *1.

The appeal at hand deals with the trial on remand from *Michelena I*. The trial court held a new trial without a jury on December 14, 2015 and January 25, 2016. On June 1, 2016, the court issued a "Judgment on New Trial for Property Division," which Robert now appeals. The court later issued Findings of Fact and Conclusions of Law on August 3, 2016.

## II.    PRENUPTIAL AGREEMENT

By his first issue, Robert asserts that the trial court committed reversible error by not enforcing the "Agreement in Contemplation of Marriage" regarding two assets: Texas State Bank account number 602 (TSB 602) and a $40,000 legal settlement. Robert argues that the prenuptial agreement provided that "any property held in the individual name of either party to this agreement shall be presumed to be the separate property of that party," and that both assets met this condition.

## A.    Applicable Law

A prenuptial agreement is an agreement made between prospective spouses in contemplation of marriage which becomes effective on marriage. TEX. FAM. CODE ANN. § 4.001(1). Here, the parties mutually agreed that assets held in the individual name of

3

either spouse would be presumed separate property.

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a). "The degree of proof necessary to establish that property is separate property is clear and convincing evidence. *Id*. § 3.003(b). "Clear and convincing evidence" means the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. Separate property will retain its character though a series of financial exchanges "so long as the party asserting separate ownership can overcome the community presumption by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character." *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.) (citing *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975)). "On the other hand, if the evidence shows that separate and community property have become so commingled as to defy resegregation and identification, the community presumption prevails." *Id*. (citing *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.)). In general, testimony alone that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption. *Id.*

Findings of fact from a bench trial have the same "force and dignity" as a jury's verdict upon jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review fact findings in a bench trial for legal and factual sufficiency of the evidence by the same standards used in reviewing the evidence supporting a jury's

4

verdict. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). And "[a] trial court may properly disregard a jury's finding of fact where the evidence supporting the finding is legally insufficient." *Bufkin v. Bufkin*, 259 S.W.3d 343, 353 (Tex. App.—Dallas 2008, pet. denied) (citing *Toles v. Toles*, 45 S.W.3d 252, 259 (Tex. App.—Dallas 2001, pet. denied); *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990)). When a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We first examine the record for evidence that supports the finding; if there is none, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The challenge will be sustained only if the contrary proposition is conclusively established. *Id.* When a party attacks the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all of the evidence and will set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

When a party raises a legal sufficiency challenge to an adverse finding on an issue on which the opposite party had the burden of proof by clear and convincing evidence, we look at all the evidence in the light most favorable to the judgment to determine if the trier of fact could reasonably have formed a firm belief or conviction that its finding was

5

true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We presume that the trier of fact resolved disputed facts in favor of its findings if a reasonable trier of fact could do so, and we disregard any contrary evidence if a reasonable trier of fact could do so, but we do not disregard undisputed facts. *Id.* When a party raises a factual sufficiency challenge to an adverse finding on an issue on which the opposite party had the burden of proof by clear and convincing evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

## B.     Texas State Bank Account 602

TSB 602 is in Robert's name only. Robert contends the court erred when it claimed that he "failed to offer clear and convincing evidence tracing any funds to a separate account with respect to the disputed accounts."

In *Michelena I*, we previously held that there was more than a scintilla of evidence suggesting that community funds had been commingled in TSB 602. We explained as follows:

> As to the number 602 account, in particular, Monica points us to evidence from trial that community funds were commingled with the number 602 account. First, Monica points us to evidence—namely, a series of cleared checks—that she deposited community funds in the 602 account. Second, Monica points us to evidence that Robert took out a $40,000 loan during the marriage that he deposited into the 602 account; the record includes bank documents and testimony by Robert substantiating this fact, as well. Because any loan taken out during the marriage is presumed to be community property, Robert commingled community funds with the 602 account when he deposited the loan into that account. Finally, Monica

6

points us to testimony by herself and Robert that Robert deposited wages from various jobs he held during the marriage into the 602 account.

. . . .

With regard to the number 602 account, although there was evidence at trial that the funds in the account originated from the sale of property listed in the prenuptial agreement, we believe the record contains more than a scintilla of evidence that community funds were commingled with the account, as well. As such, the evidence created a fact issue as to whether the number 602 account retained its separate character, and the trial court erred in granting Robert's directed verdict as to this account and not submitting the account to the jury for characterization.

*Michelena I*, 2012 WL 3012642, at *11–12 (internal citations omitted). We remanded the case to the trial court to consider, among other things, the proper characterization of TSB 602.

After the bench trial on remand, the trial court made the following findings of fact regarding the TSB 602 account:

11. The Court finds that there is substantial evidence of the com[m]ingling of community funds into the Texas State Bank (TSB) 602 account.

12. The Court finds Respondent Robert Michelena offered no documentary evidence, and no clear and convincing evidence, tracing separate funds into the Texas State Bank (TSB) 602 account as required by law.

13. Therefore, the Court finds that the Texas State Bank (TSB) 602 account is a community asset of the parties.

14. The Court further finds that TSB 602 account contained $498,366.00, (as the Court of Appeals found to be in TSB 602 account), as of the date of the filing of the divorce.

15. The Court finds that Petitioner Monica Michelena should be awarded 50% community share of the funds contained in the TSB 602 account, as of the date of the filing of the divorce.

7

16. The Court finds that Respondent Robert Michelena should be awarded 50% community share of the funds contained in the TSB 602 account, as of the date of the filing of the divorce.

Here, Monica and Robert's prenuptial agreement provided that "any property held in the individual name of either party to this agreement shall be presumed to be the separate property of that party."[1] According to the record, however, this "presumption" was rebutted with evidence that the funds already in TSB 602 had been commingled with community property funds. *See id*. at *11. Because the presumption that TSB 602 was separate property had been rebutted, it was Robert's burden to provide clear and convincing evidence that he could trace all of the deposits into TSB 602 to separate funds. *See* TEX. FAM. CODE ANN. § 3.003(b).

The trial court concluded that Robert did not meet this burden. It held that there was "no documentary evidence, and no clear and convincing evidence, tracing separate funds into the Texas State Bank (TSB) 602 account as required by law." On the other hand, the court heard from Monica's accounting expert, Billy Bradford, who testified through his report as follows:

It should be noted that: (1) all earnings of Robert Michelena from the date of their marriage in 1994 until the time of their divorce in 2006 were deposited into this Account; (2) Monica acknowledged it as the primary Account for handling community affairs; and (3) interest earned on the Account holdings remained in this account.

The facts in this case demonstrate that Robert has so hopelessly mixed his separate assets with community property assets that tracing of Account #602 has become impossible. Therefore, it is my opinion that the entire account balance at the time of the divorce decree ($498,366) should be considered community property.

---

[1] We note that the "assumption" in the parties' prenuptial agreement clearly contradicts family code § 3.003(a), but neither party argues that the agreement is invalid for this reason.

8

Robert relies heavily on *Fischer-Stoker v. Stoker* for the proposition that the trial court erred in not honoring the parties' prenuptial agreement. 174 S.W.3d 272 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). However, *Fischer-Stoker* is distinguishable. In that case, Dianne Fischer-Stoker and Ronnie Stoker had a premarital agreement that identified their separate properties. *Id*. at 275-76. At issue in that case were Dianne's retirement accounts: one account was valued at approximately $500,000 at the time of divorce while the other was valued at $60,000. *Id*. at 275. In the parties' agreement, they had specific language that provided as follows:

> Any right of reimbursement that may arise during our marriage for payments or contributions made to the other's separate estate to the extent any payment is made by one for the benefit of the other *shall be presumed to be a gift* to the other party's separate estate.

*Id.* at 278 (emphasis added). In light of this language, the court characterized Dianne's retirement accounts as her separate property. *Id*. at 281–82. Robert and Monica did not have this analogous language in their prenuptial agreement. Accordingly, any "payments or contributions" made to "any property held in the individual name of either party" constituted commingling and defeated the separate property presumption initially afforded by their premarital agreement.

Under our standard of review, we must defer to the trial court's findings of fact if they are supported by the record. *Ortiz*, 917 S.W.2d at 772. Because the record shows evidence of commingling and Robert failed to conclusively rebut the community property presumption with clear and convincing evidence, we conclude that the trial court did not err in determining that TSB 602 is community property. *See* TEX. FAM. CODE ANN.

9

§ 3.003(b).

## C.    Legal Settlement

Robert also complains by his first issue about the trial court's characterization of a $40,000 legal settlement as community property. The record shows Robert filed the lawsuit in his own name after the parties filed for divorce, but while the parties were still married. Robert claims that this asset is his separate property.

It is undisputed, however, that Robert did not disclose this asset during the original divorce proceedings. In the original decree of divorce signed on July 23, 2009, the trial court ordered "that any undisclosed asset of the parties is awarded to the party not in possession or control of the asset." Accordingly, the trial court did not err by failing to characterize this asset as Robert's separate property. *See infra* section IV (addressing Robert's challenges to the "undisclosed assets" provision of the 2009 decree). We overrule Robert's first issue.

### III.    THE VALUATION OF THE COMMUNITY ESTATE

By his second issue, Robert complains that the trial court erred when it failed to value the community estate at the time of divorce. He specifically complains about the court's property valuations of TSB 602, AG Edwards account 4544-5675, and Compass Bank CD #3222000.

## A.    Applicable Law

A trial court is required to divide the community property in a just and right manner. TEX. FAM. CODE ANN. § 7.001; *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). "It is the responsibility of the parties to provide the trial

judge with a basis upon which to make the division." *Finch*, 825 S.W.2d at 221. "One who complains of the way the trial court divided the properties must be able to show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion." *Id.; see also LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex. App.—Corpus Christi–Edinburg 1988), *aff'd*, 778 S.W.2d 865, 865 (Tex. 1989).

Generally, property should be valued as of the date of the divorce. *See Handley v. Handley*, 122 S.W.3d 904, 908 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *Mata v. Mata*, 710 S.W.2d 756, 759 (Tex. App.—Corpus Christi–Edinburg 1986, no writ). However, whether an appraisal is near enough in time to the date of the divorce to be considered in determining value for purpose of the property division is generally left to the discretion of the trial court. *See Grossnickle v. Grossnickle*, 935 S.W.2d 830, 839 (Tex. App.—Texarkana 1996, writ denied) (citing *Finch v. Finch,* 825 S.W.2d 218 (Tex. App.—Houston [1st Dist.] 1992, no writ)); *see also O'Carolan v. Hopper*, 414 S.W.3d 288, 311 (Tex. App.—Austin 2013, no pet.) (holding that, in some cases, the determination of when to value property at a different time than the divorce "is in fact so specific that it should be left to the discretion of the trial judge to avoid the inequities that could result by making a bright-line rule." (quoting *Parker v. Parker,* 897 S.W.2d 918, 932 (Tex. App.—Fort Worth 1995, writ denied))).

## B.    Texas State Bank 602

In its judgment, the trial court concluded that the "substantial evidence" of commingling of community funds in TSB 602 characterized it as a community asset. The court also found that TSB 602 contained $498,366.21 as of the date of the filing of the

divorce suit. Accordingly, in dividing the asset in half, the court awarded Monica $249,183.11 as her share of the TSB 602 account.

Robert complains that the court should have divided TSB 602 according to its value as of the date of divorce, not the date of the filing of the divorce action. *See Handley*, 122 S.W.3d at 908; *Mata*, 710 S.W.2d at 759. Robert, however, points to no evidence establishing the value of TSB 602 at the exact time of divorce. In fact, the record shows that Robert refused to provide any information about TSB 602 during the divorce discovery process. During her direct examination at the trial on remand, Monica testified as follows:

Q: You made a request for production to Mr. Michelena asking him to give you all the bank documents regarding the 602 account; is that correct?

A. Yes, it is.

Q. Okay. And did he provide you that?

A. No, he did not.

Q. What did he do instead?

A. He said, "go out and get them yourself."

Q. And he gave you a release?

A. And he had to sign a release, yes.

Q. And so you went and requested all these documents from all the banks that ever had anything to do with this 602 account?

A. That's correct.

Monica confirmed that the bank statement from April 15, 2003 "was the only

statement that [she] had that reflected any information on [that] account."[2] Robert, as the party who is complaining about the valuation and consequent division of this asset, bears the burden to "show from the evidence in the record that the division is so unjust and unfair as to constitute an abuse of discretion." *Finch*, 825 S.W.2d at 221; *LeBlanc*, 761 S.W.2d at 453. He has not done so. "Appellant did not avail himself of the opportunity to provide values on any of the property to the trial court." *LeBlanc*, 761 S.W.2d at 453; *see also Mata*, 710 S.W.2d at 758. "He cannot now complain of the court's lack of complete information." *LeBlanc*, 761 S.W.2d at 453; *see also Mata*, 710 S.W.2d at 758.

It appears the trial court valued TSB 602 according to the only bank statement it had for that account. In consideration of this fact, we cannot say it abused its discretion in a manner that was unjust or unfair when it appraised the property at $498,366.21 and awarded Monica half of that. *See Grossnickle*, 935 S.W.2d at 839; *see also Mata*, 710 S.W.2d at 758 (concluding that "where the uncontested evidence establishes only one value, the trial court cannot draw a different inference."). Accordingly, we reject this argument.

## C.    AG Edwards Account 4544-5675

Robert also complains that the trial court's valuation of AG Edwards Accounts 4544-5675 was from the date of filing of the divorce, not the date of divorce. *See Handley*, 122 S.W.3d at 908. The record shows that these accounts were opened during the parties' marriage under Robert's name along with his mother, Loretta Michelena, on

---

[2] The record includes bank account statements for TSB 602 from after the parties' divorce, but we consider this irrelevant to the inquiry at hand.

13

March 20, 2001. Monica testified that on April 29, 2005, these accounts were worth $117,744.87. There is no other valuation evidence in the record for this asset. Again, in light of these circumstances, we cannot say the trial court abused its discretion when it valued this asset at $117,744.87, when Monica filed for divorce, when Robert provided no evidence of its worth at the time of divorce. *See Mata*, 710 S.W.2d at 758. We reject this argument.

**D.     Compass Bank CD #3222000**

Robert finally complains about the court's valuation of Compass Bank CD #3222000, which was awarded in its entirety to Monica. Monica testified that Robert opened this account with his mother Loretta during the marriage with a deposit of $150,000 from TSB 602 on May 7, 2003. According to Monica's testimony, this CD had a value of $157,141.71 on November 7, 2005, and was closed on August 2, 2007 with a withdrawal of $154,126.80.

During trial, Robert did not provide any valuation information for this asset at the time of divorce. *See LeBlanc*, 761 S.W.2d at 453; *see also Mata*, 710 S.W.2d at 758. Monica's information is the only valuation evidence. The trial court on remand ultimately valued this account at $157,141.71. However, the value closest to the date of divorce was $154,126.80. We conclude that the trial court abused its discretion when it failed to use the valuation evidence of Compass Bank CD #3222000 closest to the date of divorce, or $154,126.80. *See Mata*, 710 S.W.2d at 759.

**E.     Conclusion**

We sustain Robert's second issue in part, concluding that the trial court abused its

14

discretion when it valued Compass Bank CD #3222000 without reference to the valuation evidence closest to the date of divorce. We overrule the remainder of Robert's second issue.

## IV. PREJUDGMENT INTEREST

By his third issue, Robert complains of the prejudgment interest award to Monica on certain assets.

### A. Applicable Law

A party may recover prejudgment interest where it is provided for in a contract, by an enabling statute, or through common law. *De la Garza v. De la Garza*, 185 S.W.3d 924, 927 (Tex. App.—Dallas 2006, no pet.); *see Banker v. Banker*, 517 S.W.3d 863, 881 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied) ("As a general rule, parties are required to plead for pre-judgment interest sought at common law as an element of damages, whereas statutory or contractual interest may be predicated on a prayer for general relief."); *Bufkin*, 259 S.W.3d at 357. Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson v. Ventling*, 462 S.W.3d 92, 97 (Tex. App.—Corpus Christi–Edinburg 2013), *rev'd in part on other grounds*, 466 S.W.3d 143 (Tex. 2015).

"The statute now governing prejudgment interest is the Texas Finance Code." *Bufkin*, 259 S.W.3d at 357. The finance code provides for the recovery of prejudgment interest in cases involving extensions of credit, wrongful death, personal injury, property damage, or condemnation. *See* TEX. FIN. CODE ANN. §§ 302.002, 304.101, 304.201. If,

15

however, there is no recovery of prejudgment interest under statute, it may only be awarded if it is provided by contract or requested through proper pleadings. *Bufkin*, 259 S.W.3d at 357.

We review a trial court's award of prejudgment interest under an abuse of discretion standard. *Ventling*, 462 S.W.3d at, 97; *Morales v. Morales,* 98 S.W.3d 343, 348 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied). To determine if there was an abuse of discretion, we must decide if the lower court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "Courts do have the equitable power to award prejudgment interest." *Bufkin*, 259 S.W.3d at 358.

## B. Analysis

The court granted prejudgment interest to Monica on the following seven assets: (1) $33,715.89 for AG Edwards accounts #5657 and #5621; (2) $82,366.66 for TSB 602; (3) $65,400.23 on the couple's community property division; (4) $13,221.92 for the TSB lawsuit; (5) $39,031.17 for AG Edwards account 4544-5675; (6) $51,942.87 for the Compass Bank CD; and (7) $6,610.96 for Monica's heirloom ring. In sum, the trial court granted Monica $292,289.50 in prejudgment interest.

We first analyze whether the Texas Finance Code authorizes the assessment of prejudgment interest upon the recovery of any of the assets. We note that none of the assets deal with wrongful death, personal injury, property damage, or condemnation. *See* TEX. FIN. CODE ANN. §§ 304.101, 304.201. We further note that none of the financial accounts (AG Edwards accounts #5657 and #5621, TSB 602, AG Edwards accounts

16

4544-5675, and the Compass Bank CD) appear to be "extensions of credit" as contemplated by the finance code. *See id*. § 302.002 (providing that "if a creditor has not agreed with an obligor to charge the obligor any interest, the creditor may charge and receive from the obligor legal interest . . . ."). AG Edwards, TSB, and Compass Bank are not "creditors" and Robert and Monica are not "obligors" within the meaning of § 302.002. *See id*.; *see also id*. § 301.001(a)(3) (defining a "creditor" as "a person who loans money or otherwise extends credit"), § 301.001(a)(13) (defining an "obligor" as "a person to whom money is loaned or credit is otherwise extended"). Accordingly, we conclude there is no statute authorizing prejudgment interest for these assets.

We now look to the common law to determine if prejudgment interest is warranted.[3] *See Banker*, 517 S.W.3d at 881. Monica's "Second Supplemental Amended Original Petition for Divorce" specifically requested "post-judgment interest as allowed by law." Her prayer asked for "attorney's fees, expenses, costs, and interest and for general relief." This language does not meet the specific pleading requirements for prejudgment interest as set forth in Texas case law. "[W]here prejudgment interest is sought at common law as an element of the damages, a plaintiff must plead for it." *Bufkin*, 259 S.W.3d at 358. "A prayer for general relief does not suffice." *Id*. And a "prayer for general relief will not authorize prejudgment interest where there is a prayer for interest on the judgment followed by a prayer for general relief." *Tex. Indus., Inc. v. Lucas*, 715 S.W.2d 683, 687

---

[3] It is undisputed that the parties did not have a contract authorizing prejudgment interest on any assets. *See De la Garza v. De la Garza*, 185 S.W.3d 924, 927 (Tex. App.—Dallas 2006, no pet.). "We recognize that as a general rule[,] plaintiffs are required to plead for prejudgment interest sought at common law as an element of damages, whereas statutory or contractual interest may be predicated on a prayer for general relief." *Benavidez v. Isles Constr. Co.*, 726 S.W.2d 23, 25 (Tex. 1987).

17

(Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Monica's petition explicitly asked for "post-judgment interest" and then generally prayed for "interest" but did not specifically request "pre-judgment interest." *See Bufkin*, 259 S.W.3d at 358 (holding no prejudgment interest was requested where it was not listed specifically and the party generally prayed for "such other and further relief, general or special, legal or equitable, to which she may show herself justly entitled to receive"); *Tex. Indus.*, 715 S.W.2d at 687 (denying prejudgment interest where the plaintiff prayed for "interest on the amount of the judgment at the legal rate until paid"); *Tenn. Life Ins. v. Nelson*, 459 S.W.2d 450, 454 (Tex. App.—Houston [14th Dist.] 1970, no writ) (denying prejudgment interest when the plaintiff requested general relief "together with interest on the amount of the judgment at the legal rate until paid"); *see also Acad. Corp. v. Hansen*, No. 01-00-00219-CV, 2002 WL 356492, at *9 (Tex. App.—Houston [1st Dist.] Mar. 7, 2002, pet. denied) (mem. op., not designated for publication) (denying prejudgment relief on a trespass claim when the plaintiff only specifically requested prejudgment interest on an ad valorem claim); *but see B. A. Mortg. Co. v. McCullough*, 590 S.W.2d 955, 958–59 (Tex. App.—Fort Worth 1979, no writ) ("A general prayer for relief may be sufficient to allow prejudgment interest if all that is requested is 'interest', with no further identification of the rate, amount on which it is to be based, and so forth, but merely requesting 'such other and further relief' to which plaintiff feels justly entitled is too general to support an interest award."). Accordingly, we conclude that Monica did not establish a right to recover prejudgment interest under the common law, either.[4]

_____

[4] We find Monica's argument that Robert should have filed special exceptions on the question of interest unpersuasive. The relevant case law sets forth that the burden of pleading was hers. *Bufkin v.*

In sum, none of the assets at issue were covered by a statute warranting prejudgment interest, there was no contract between the parties outlining the recovery of prejudgment interest, and Monica's general prayer for "interest" did not meet case law standards for the award of such interest. *See Banker*, 517 S.W.3d at 881; *Tex. Indus.*, 715 S.W.2d at 687; *Tenn. Life Ins.*, 459 S.W.2d at 454; *see also Acad. Corp.*, 2002 WL 356492, at *9. Because the trial court did not rely on guiding rules or principles when awarding Monica prejudgment interest, its award thereof constituted an abuse of discretion. *See Downer*, 701 S.W.2d at 241-42. We sustain Robert's third issue.

## V.    DISTRIBUTION OF THE UNDISCLOSED ASSETS

By his fourth issue, Robert argues that the trial court improperly gave Monica 100% of two assets which the trial court found were undisclosed at the time of the decree: the AG Edwards account 4544-5675 valued at $117,774.87 and the Compass Bank CD #3222000 valued at $157,141.171.[5]

In the original decree of divorce signed on July 23, 2009, the trial court ordered, consistent with the parties' agreement, "that any undisclosed asset of the parties is awarded to the party not in possession or control of the asset." This portion of the order was not challenged in *Michelena I* or *Michelena II*. In fact, in *Michelena I*, our disposition was as follows:

> We reverse the trial court's division of property and remand this case to the trial court for a new trial as to the number 602 account, in particular, and a

---

*Bufkin*, 259 S.W.3d 343, 358 (Tex. App.—Dallas 2008, pet. denied). Further, we conclude that Monica's reliance on *Anderson v. Anderson*, 707 S.W.2d 166, 170 (Tex. App.—Corpus Christi–Edinburg 1986, writ ref'd n.r.e.) is misplaced because, in *Anderson*, the appellant specifically pleaded for prejudgment interest. *See id.* at 170-171.

[5] As previously concluded, the correct valuation for the Compass Bank CD was actually $154,126.80.

new division of the estate after the new trial and in light of the holdings in this case. *We affirm the remainder of the divorce decree.*

2012 WL 3012642, at *20 (emphasis added).

Robert's AG Edwards account 4544-5675 and Compass Bank CD #3222000 were first disclosed in the trial on remand held on December 14, 2015 and January 25, 2016. The record shows the AG Edwards account was originally opened in Robert's name, along with his mother Loretta, in March of 2001 while Robert and Monica were still married. This account is now in Robert's sole possession because his mother passed away, making him the sole owner. The Compass Bank CD was opened in May of 2003 in Loretta Michelena's name while Monica and Robert were still married, as well. The evidence from the trial on remand shows that the Compass Bank CD was opened with funds that were originally in the TSB 602 account.

Accordingly, under the terms of the original divorce decree, the trial court awarded these assets to Monica as her separate property because they were previously undisclosed. We disagree with Robert that these two accounts should be considered in the trial court's new division of community property, as we ordered the court to do in *Michelena I*. Because Robert failed to disclose these accounts in the original divorce, the trial court awarded them to Monica as her separate property in the trial on remand, per the terms of the original divorce decree. We cannot conclude that the trial court abused its discretion in doing so. *See Downer,* 701 S.W.2d at 241–42. We overrule Robert's fourth issue.

### VI. MONICA'S AWARD OF $197,853.98 FOR EXHIBIT C PROPERTY

By his fifth issue, Robert asserts that the trial court committed reversible error by

20

rendering a judgment of $197,853.98 against Robert in favor of Monica "as her share of the property listed in Exhibit C." The judgment provided as follows:

> A Judgment against Respondent ROBERT MICHELENA in the amount of $197,853.98 is awarded to MONICA MICHELENA as her share of the Exhibit C Community Property, which the Court of Appeals ordered to be divided equally[,] plus pre-judgment interest at 5%, $65,400.23, for a total judgment of $263,254.21, for which let execution issue.

The original divorce decree had five exhibits: Exhibits A, B, C, D, and E. Exhibits A, B, and C all characterized the parties' non-bank account community property. Exhibit A listed community property to be awarded to Monica, Exhibit B listed community property to be awarded to Robert, and Exhibit C listed all of the community property ordered to be sold, the profits of which would be split evenly between the parties. Exhibit D to the decree listed the bank accounts which were community property, and Exhibit E listed the community debts.

Robert points out that the value of the community property in Exhibit C is $267,707.95. This fact is undisputed. Accordingly, he asserts that Monica's award should be half of that sum, or $133,853.98. Instead, the trial court awarded Monica that amount ($133,853.98) plus $64,000, and prejudgment interest of $65,400.23,[6] for a total of $263,254.21.

Monica encourages us to take a different analysis: she suggests we take the total value of the community property, which the trial court found to be $479,707.95, divide that sum in half for a result of $239,853.98, and then subtract $42,000. She suggested the trial court subtracted $42,000 because in *Michelina I*, we concluded that Monica had

---

[6] We have already concluded that Monica is not entitled to prejudgment interest. *See supra* Part IV of this opinion.

21

already received $42,000 of community property. *See* 2012 WL 3012642, at *2 (noting that the original divorce decree set forth that Monica received "personal property from the community estate valued at approximately $42,000"). This approach leads us to the sum of $197,853.98, which is precisely the amount of the judgment at issue, before interest.

From the language in its most recent order and its related findings of fact, it seems that the trial court intended to divide the community property assets equally. It appears, though, that the inclusion of the phrase "Exhibit C" led to confusion about the community property award. Accordingly, we sustain Robert's fifth issue in part and reform this part of the judgment to provide that, "A Judgment against Respondent ROBERT MICHELENA in the amount of $197,853.98 is awarded to MONICA MICHELENA as her share of the Community Property, which the Court of Appeals ordered to be divided equally, for which let execution issue." *See* TEX. R. APP. P. 43.6 ("The court of appeals may make any other appropriate order that the law and the nature of the case require.").

## VII. DISPROPORTIONATE SHARE OF COMMUNITY PROPERTY

In his sixth and final issue, Robert contends that the "overall division of property in the Judgment on New Trial for Property Division" is so disproportionate as to be an abuse of discretion and requires reversal of the property division and remand for a new division.

### A. Standard of Review and Applicable Law

In a decree of divorce, the court shall order a division of the community estate in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001. In effecting a just and right division of the community estate, § 7.001 of the Texas Family Code vests the trial court with broad discretion that

22

will not be reversed on appeal unless the complaining party shows that the trial court clearly abused its discretion. *Murff v. Murff,* 615 S.W.2d 696, 698 (Tex.1981). The test of whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably, and without reference to any guiding principles. *Downer,* 701 S.W.2d at 241–42.

## B.    Analysis

Robert's entire argument concerning this issue is as follows:

Monica Michelena's attorney Gilberto Hinojosa stated at the start of the trial on remand that this Appellate Court had remanded this case because, after valuing the community property at $750,000.00, the Appellate Court had found the division to amount to a 75/25 division, *Michelena v. Michelena*, 13-09-00588-CV, 2012 WL 3012642 (Tex. App.—Corpus Christi[–Edinburg] June 15, 2012, no pet.). In the case at bar, the adding up the individual awards reveals that the current *Judgment on New Trial for Property Division* awards a judgment against Robert Michelena of close to a million dollars. If the Appellate Court's earlier estimate was correct, this division is more disproportionate by an order of magnitude.

Robert provides no specific citations to the record or any meaningful legal analysis to support this issue. Accordingly, we overrule Robert's sixth issue for inadequate briefing. *See* TEX. R. APP. P. 38.1(i); *Fredonia State Bank v. Gen. Am. Life Ins.*, 881 S.W.2d 279, 283 (Tex. 1994) (holding that it has never been a part of an appellate court's duties to search the record for factual assertions or order re-briefing).

## VIII.    CONCLUSION

We reverse the portions of the judgment granting any prejudgment interest.[7]

---

[7] Although this point has not been disputed in the briefs, we also clarify that any postjudgment interest should run from the date of the original divorce decree, which is July 23, 2009. *See* TEX. FIN. CODE ANN. § 304.005 ("[P]ost[-]judgment interest on a money judgment of a court in this state accrues during the period beginning on the date the judgment is rendered and ending on the date the judgment is satisfied.").

We also reverse the trial court's judgment with regard to the valuation of Compass Bank CD #3222000. We render judgment that the proper valuation of this asset is $154,126.80, which is supported by valuation evidence closest to the date of divorce.

We modify the language regarding Monica's community property award to provide that, "A Judgment against Respondent ROBERT MICHELENA in the amount of $197,853.98 is awarded to MONICA MICHELENA as her share of the Community Property, which the Court of Appeals ordered to be divided equally, for which let execution issue."

We affirm the remainder of the judgment as modified.

LETICIA HINOJOSA
Justice

Delivered and filed the
19th day of March, 2020.